745 So.2d 1248 (1999)
Elizabeth KNEPPER, Plaintiff Appellant,
v.
Herbert ROBIN, et al., Defendant Appellee.
No. 99-95.
Court of Appeal of Louisiana, Third Circuit.
November 17, 1999.
Writ Granted in part February 18, 2000.
*1250 Hal James Broussard, Ped C. Kay III, Lafayette, for Elizabeth Knepper.
M. Candice Hattan, Lafayette, for Herbert Robin, et al.
Preston D. Cloyd, Lafayette, for State Farm Mutual Automobile Insurance.
BEFORE: COOKS, SAUNDERS AND DECUIR, Judges.
SAUNDERS, Judge.
This matter arises from an automobile accident on Interstate 10. The defendant's vehicle crossed the median, striking the plaintiffs vehicle on the driver's side. After the impact, the plaintiffs vehicle came to rest on the shoulder of the interstate and caught fire. For injuries resulting from the accident, the plaintiff brought suit, and a jury awarded the plaintiff $55,500.00 for general damages plus $44,500.00 for special damages. The plaintiff has appealed the judgment, seeking an increase in quantum. We amend in part and reverse in part.

FACTS
On June 15, 1994, Elizabeth Knepper, hereinafter "Plaintiff," was involved in an automobile accident with Herbert Robin, hereinafter "Defendant," which occurred on Interstate 10 in St. Martin Parish. Defendant was operating a Chevrolet Blazer, traveling in the eastbound passing lane, when his vehicle crossed the grass median and struck Plaintiff's Honda Civic, which was traveling in the westbound passing lane. Defendant's vehicle struck the side of Plaintiff's vehicle, sending her Honda Civic spinning. Defendant's truck was totaled, and Plaintiff's vehicle was smashed and fire damaged. Plaintiff was flown by helicopter from the scene of the accident to the Lafayette General Medical Center where she received treatment; she was not held overnight. She returned two days later complaining of left shoulder pain. She was ultimately treated by various doctors for TMJ, an extruded disc fragment in her lower back and depression.
Plaintiff filed suit seeking damages for injuries resulting from the accident. A trial by jury ensued, and a verdict was rendered on October 31, 1997. Plaintiff moved for a Judgment Notwithstanding the Verdict on quantum, which was denied.

LAW AND ANALYSIS

I. Plaintiff's Assignments of Error Against the Jury
In Plaintiff's first and second assignments of error, she argues the jury manifestly erred when it awarded her only $45,500.00 for the general damages of physical and mental pain and suffering, past and future, and only $26,500.00 in special damages for future medical expenses. Plaintiff now argues that her general damages award should be, at a minimum, increased to $80,000.00. Plaintiff also seeks on appeal an increase of her special damages award for future medical expenses to reflect the medical calculations presented at trial, particularly, $69,640.00.

A. General Damages Review
Reviewing the record with an eye of particularity of the jury's award as it relates to the injuries and circumstances of this plaintiff, we find the jury's award is below that which a reasonable trier of fact could assess.
The standard of review of general damages is well settled:
Before a Court of Appeal can disturb a quantum award made by the Trial Court, the record must clearly reveal that the trier of fact abused its discretion in making its award; only after making a finding that the record supports that the lower court abused its *1251 much discretion can an appellate court disturb the award and then only to the extent of lowering it or raising it to the highest or lowest point which is reasonably within the discretion afforded that court.
West v. Wal-Mart Stores, Inc., 539 So.2d 1258, 1262 (La.App. 3 Cir.), writ denied, 543 So.2d 19 (La.1989), citing, Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). Further guiding our inquiry is the discussion provided in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), which explains:
In Reck[[1]], this court disapproved the appellate court's simply reviewing the medical evidence and then concluding that the award for those injuries was excessive, without taking into consideration the particular effect of the particular injuries on the particular plaintiff. This court further disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. The initial inquiry is whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the "much discretion" of the trier of fact. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963); Ballard v. National Indem. Co. of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967). Only after such a determination of an abuse of discretion is a resort to prior awards appropriate and then for the purpose of determining the highest or lowest point which is reasonably within that discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Bitoun v. Landry, 302 So.2d 278 (La. 1974); Spillers v. Montgomery Ward & Co., 294 So.2d 803 (La.1974).
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
With great deference to the factfinder, we closely review the evidence and testimony presented at trial to determine the propriety of the general damages awarded.

1. Bulging Disc
Plaintiff, through the course of June 15, 1994, up to the date of trial, October 28 to November 13, 1997, sought medical treatment from several sources. Plaintiff testified at trial, explaining the events after the accident. She stayed at her brother's home for a short while after the accident and then she stayed with her mother in Alexandria. In the days following the accident, Plaintiff described:
intense ringing in the ears, a lot of pain in the jaw and head area, very intense pain just shooting upward from my ears in the direction (indicating), general aches and pains. My shoulder hurt. As I said, I could hardly use my left arm. I *1252 couldn't lift anything with my left hand... My back was hurting, my legs.
To manage the pain, Plaintiff took pain killers and muscle relaxers for weeks after the accident. Having to return to work, and after buying another vehicle, Plaintiff drove to her Florida home in August. Plaintiff described the drive as being extremely difficult, unnerving and stressful. She explained when she drove, she had flashbacks of the accident and imagined wrecks happening.
Plaintiff recalled that though the pain in her shoulders and back continued, she wanted to rest and give her body a chance to heal before she sought further medical help. She attempted to go back to her daily activities in October of 1994; she had lifted weights for a year before the accident, and when she tried to begin working out, she found her body mechanics to be greatly altered. Her lower back became extremely sore from the effort. Plaintiff testified that she figured she needed more time to heal. She noticed the following spring similar pain when she tried to vacuum and do certain movements in the classroom. Plaintiff noted that in June of 1995, she could not bend over the next day after mopping a floor. It was then she decided to seek help; she saw Dr. Blake, a chiropractor. Dr. Blake referred her to Dr. Kornberg.
Plaintiff saw Dr. Marcus Kornberg, an orthopedic surgeon, for the first time in July, 1995. Dr. Kornberg's report noted she had a L4-5 disc protrusion without nerve compression which did not require surgery. Dr. Kornberg recommended physical therapy, medication and the first MRI. Dr. Kornberg's August 22, 1995, report noted, "I believe she has an acute change involving the disc as a result of the motor vehicle accident, which is the cause of her symptoms." Dr. Kornberg put her on anti-inflammatories, told her to take it easy and gave her some home strengthening exercises to strengthen the muscles around the disc. Her back worsened, and on her next visit to Dr. Kornberg, she began strengthening physical and heat therapy. She went to physical therapy nine times in November, 1996. During her treatment with Kornberg, she was bedridden for two to three days at a time. She missed days from work for appointments. Her back grew worse and she saw him again in December, 1996. After a bad episode, Dr. Kornberg ordered another MRI which taken on December 27, 1996. Dr. Kornberg felt the second MRI indicated no major changes. His report read: "She does have changes at the L4-5 level with mild annular bulge; however, there is no evidence of nerve element displacement or compression." Plaintiff explained at trial that she ultimately left Dr. Kornberg because he told her she would have the injury all of her life and physical therapy was not going to help her. Refusing to believe there was no remedy for her, she sought the help of Dr. Clifton Warren Shephard, a field expert in orthopedics.
The record indicates Dr. Shephard saw Plaintiff for the first time on March 27, 1997. Plaintiff explained that she was so discouraged, she was contemplating returning home and moving back to Louisiana, so she thought the best thing to do would be to get a second opinion from someone in Lafayette. Dr. Shephard testified that he was aware Plaintiff had received sporadic treatment in Florida and Lafayette since the accident; he stated that he received medical records from eight different sources. The first MRI taken of Plaintiff taken in August, 1995, as discussed by Dr. Shephard, displayed a left-sided herniated disc. However, Dr. Shephard opined that the second MRI taken of Plaintiff in December 1996 revealed problems appearing on the right side-a bulge or a free floating fragment of disc.
Dr. Shephard discussed reports on Plaintiff indicating she had an extruded disc fragment. After viewing the third MRI, taken in September, 1997, Dr. Shephard concluded that she did have an extruded disc fragment. Dr. Shephard explained how such fragments float and *1253 move around. He recommended Plaintiff take long-term medication and physical therapy. Plaintiff explained she was unable to continue the medication prescribed for her by Dr. Shephard because it prevented her from working.
When Plaintiff saw Dr. Shephard on September 4, 1997, she complained of chronic neck and left shoulder pain. Ultimately, he concluded she had subscapular bursitis. Dr. Shephard opined that the problems with her neck and shoulder should improve with cortisone shots and physical therapy. For Plaintiff's lower back, Dr. Shephard explained that if she suffers enough, surgery (laminectomy) might be required. He noted that back surgery would involve at least a three day hospital stay and would cost between $20,000.00-$25,000.00, with post-operative treatment costing about $10,000.00. Dr. Shepard noted that Plaintiff could return to work on a part-time basis six months thereafter; it would take eighteen months of recovery before she could return fulltime. Dr. Shephard recalled receiving a report from Dr. Jeffrey B. Friedman, an independent medical examiner, who observed Plaintiff on one single occasion on September 13, 1996.
Dr. Friedman's report described his assessment of Plaintiff. She had "chronic neck pain, chronic low back pain. And that at the time that I saw her she had scant symptoms." He reviewed the MRI taken in August, 1995, and agreed with its accompanying report that it revealed a mild posterior protrusion of the disc at L5-6, which caused a mild anterior extradural defect. In his deposition, Dr. Friedman stated that he found no neurological abnormality and that she needed no further medical treatment. He did not view the other two MRI's that were done on Plaintiff. Dr. Friedman agreed a bulging disc could portend future problems such as nerve impingement or a herniated disc. He also agreed that if Plaintiff experienced further problems, she should seek medical attention. Dr. Friedman's report concluded that "the patient's complaints are causally related to the accident which occurred on 6/15/94."

2. TMJ
TMJ problems were ongoing throughout. At the time of trial, plaintiff explained she was unable to eat red meat or chew gum, and she continues to wear occlusal splints at night.
Plaintiff saw Dr. John Hardeman, an oral and facial surgeon, in August 1995 to treat her jaws which were tight and swollen from the accident. Plaintiff complained of popping jaws, ear pain and headaches. Near the same time, Plaintiff also saw a specialist, Dr. Shure, for her left hand, which was weak and could not hold anything. Both doctors recommended anti-inflammatories. Dr. Hardeman, for her TMJ, required her to eat only soft foods for a number of weeks. Plaintiff did not improve, so Dr. Hardeman referred her to Dr. Craig Lewis, an orthodontist, for splint therapy. Plaintiff explained that she was taking a lot of Advil for pain. Dr. Lewis put her on occlusal splint therapy, with a splint for her lower jaw. The lower splint helped reduce the frequency of pain. Eventually, when the one splint no longer helped, Dr. Lewis referred her to Dr. Brian Fuselier, an oral surgeon.
Plaintiff's first visit with Dr. Fuselier was on May 8, 1996. He diagnosed her with "[m]asticatory myalgia, bilateral temporomandibular joint internal derangements." Dr. Fuselier suggested she wear lower and upper splints. His notes indicated that he saw her on July 15, 1996, to adjust her splints, and on September 23, 1996, when she returned to his office, she was 80% improved. During the September 23, 1996 visit, however, Dr. Fuselier noted that Plaintiff complained that if she ate the wrong foods, her pain would return full force; she was then taking six to eight Advil tablets per week. He instructed her to return in a few months for reassessment and consideration of surgery. By December 19, 1996, Plaintiff had returned to Dr. *1254 Fuselier complaining of moderate pain occurring more regularly, three to four times per week. At the time of the deposition, Dr. Fuselier noted Plaintiff was still experiencing pain; overall she was only 30% improved. The last visit she had with Dr. Fuselier was October 16, 1997. Plaintiff was taking twenty to twenty-four Advil per week. Dr. Fuselier opined that Plaintiff's TMJ problems are related to the June 15, 1994, accident and that she is a candidate for surgery.
Her bills with Dr. Fuselier at the time of trial totaled $1,078.00. Dr. Fuselier estimated that the cost of surgery would reach $29,640.00.

3. Psychological Difficulties
Plaintiff's OB/GYN recommended she see a psychiatrist for her insomnia, nightmares and anxiety while driving. She went to see Dr. John L. Blankemeier on October 18, 1996. During his deposition, Dr. Blankemeier noted Plaintiff was suffering from depression, anxiety attacks, flashbacks and nightmares. He initially diagnosed her with dysthymia (long term chronic depression); he ultimately concurred with another doctor's later diagnosis of major depression. Dr. Blankemeier described Plaintiff as "hesitant to complain." After her second session, Plaintiff was prescribed Prozac, an anti-depressant. When that reduced her appetite, he switched her to Paxil. Dr. Blankemeier described Plaintiff:
She is someone who I think went through life just feeling like she's got to make it through by realizing other people have it worse and she's got a job and she's still alive, and so why should she be weak and complain that she's depressed?
Dr. Blankemeier explained it is normal for depression to increase over time, as Plaintiff's did, and he commented it "could even take longer than that to come on." Dr. Blankemeier opined that Plaintiff should continue to see a psychiatrist to deal with her problems. He predicted "[s]he will remain vulnerable to episodes of depression, or anxiety, even with treatment." He explained that it would be better for Plaintiff to seek psychotherapy more than once a month, as she was doing with him. He noted it would be more than a two-year solution, and she may be vulnerable to anxiety and depression throughout her life. In an attempt to be more definitive, Dr. Blankemeier explained:
So, every other week for two years with a therapist and once a month with a psychiatrist for two years would be enough to send her out to see how things would go. But I would not be surprised at all if she would need to come back into treatment at various times in her future.
He estimated her expenses would entail $2,500.00 per year for therapy, $100.00 per month for psychiatry and $100.00 per month for medication. The total cost of her visits with Dr. Blankemeier at the time of trial was $827.52. On cross-examination, several independent stressors in Plaintiff's life were brought out, including her grandmother's death in 1992, both her sister's and mother's depression, a close friend who committed suicide and Plaintiffs boyfriend problems. Dr. Blankemeier recommended continuing psychotherapy for Plaintiff even if Plaintiff's only stressor was this accident.
Thinking it would encourage her to seek therapy more often, Dr. Blankemeier suggested that she use someone closer to home; he suggested Dr. Linda S. Harper. Plaintiff saw Dr. Harper in July, 1997. Dr. Harper diagnosed her with major depression and post-traumatic stress disorder, increased her Paxil dosage and recommended psychotherapy. At the time of trial, her psychotherapist was Dr. Ann Adams.

4. Analysis
The jury awarded Plaintiff general damages for past and future mental pain, suffering and disability in the amount of $25,000.00, and for past and future physical pain, suffering and disability, the jury *1255 awarded Plaintiff $20,500.00. The totality of evidence detailing Plaintiff's experiences, the absence of contradicting or minimizing evidence, and the jury's conclusion that Plaintiff's injuries are a direct result of this accident, proves this jury clearly abused its discretion in awarding this plaintiff, suffering the past, present and continuing maladies resulting from this accident, only $45,500.00 for her general damages. Finding this abuse of discretion we consider the jurisprudence handling awards in similar cases.

5. Guiding Case Law
Plaintiff's injuries include TMJ, a protruded disc fragment in her lower back and psychological difficulties. In considering the lowest appropriate award for her disc injury, we consider those cases cited by both Plaintiff and Defendant along with Morris v. Highlands Ins. Co., 525 So.2d 125 (La.App. 3 Cir.1988), where the trial court's general damages award of $50,000.00 for the mere aggravation of a degenerative disc disease was affirmed, Nugent v. Continental Cas. Co., 93-867 (La. App. 3 Cir. 3/2/94); 634 So.2d 406, where we raised the general damages award from $10,000.00 to $40,000.00 for a plaintiff who suffered from two bulging discs and carpal tunnel syndrome, and Avery v. Commercial Union Ins. Co., 621 So.2d 184 (La.App. 3 Cir.1993), where we affirmed a general damages award of $65,000.00 for a plaintiff who suffered pain in his neck and back over two years after the accident. We find the lowest reasonable general damages award for this Plaintiffs lower back injury is $50,000.00, and we now amend the jury's finding to that extent.
Plaintiff seeks $30,000.00 for general damages suffered for her TMJ. She cites Maloney v. State Farm Insurance Company, 583 So.2d 12 (La.App. 4 Cir.), writ denied, 586 So.2d 544 (La.1991), which gave the highest amount of general damages for the injury of TMJ. A close reading of Maloney reveals that the plaintiff in that case suffered a permanently damaged disc in her jaw; the present plaintiff suffers no similar injuries. Furthermore, the highest possible award is not the appropriate standard for this review.
It is imperative to isolate general damage awards given specifically for TMJ and not in combination with other injuries. In Stoutes v. Gen. Motors Acceptance Corp., 598 So.2d 654 (La.App. 3 Cir.1992), this court found the least reasonable amount awarded for a plaintiff who underwent splint therapy for one year for TMJ triggered by a car accident to be $10,000.00. In Berthelot v. Leday, 606 So.2d 1 (La. App. 3 Cir.1992), this court reduced a general damages award of $35,000.00 to $15,000.00 for TMJ suffered by a plaintiff whose TMJ problem could have been resolved within six months after the accident had the plaintiff complied with splint therapy. In Gianfala v. State Farm Mutual Auto. Ins. Co., 615 So.2d 558 (La.App. 3 Cir.1993), writ denied, 620 So.2d 844 (La. 1993), this court found the jury did not abuse its discretion in awarding general damages in the amount of $25,000.00 for a plaintiff who suffered cervical and TMJ injuries. A review of cases awarding general damages for TMJ particularly, reveals that the lowest reasonable amount of general damages for this plaintiff who has worn upper and lower splints every night since she saw Dr. Fuselier in May 1996, and very likely will have to continue doing so for the next twenty years even if she does elect surgery, is $25,000.00.
B. Special Future Damages Review
Special damages are those which can be fixed to pecuniary certitude. American Druggists Ins. Co. v. Henry Contracting, Inc., 505 So.2d 734 (La. App. 3rd Cir.1987), writ denied, 511 So.2d 1156 (La.1987). Upon review of damage awards, if a trial court omits compensable and proven elements of damages, the appellate court must exercise its own discretion to make a res nova determination of additional damages to compensate for the omitted elements. *1256 Jackson v. United States Fidelity and Guaranty Co., 382 So.2d 223 (La.App. 3d Cir.1980), writ denied, 385 So.2d 275 (La.1980).
Hernandez v. Continental Cas. Ins. Co., 615 So.2d 484, 488 (La.App. 4 Cir.), writ denied, 620 So.2d 850 (La.1993). "Damages for future medical costs must be established with some degree of certainty. An award for future medical expenses will not be made absent medical testimony that they are indicated and setting out their probable cost." Thompson v. Coates, 29,333 (La.App. 2 Cir. 5/7/97); 694 So.2d 599, 605, writ denied, 97-1442 (La.9/26/97); 701 So.2d 985. We note in Theriot v. Allstate, 625 So.2d 1337 (La.1993), the Supreme Court reversed the lower court's denial of future medical damages in light of the uncontroverted medical testimony indicating that the plaintiff would be the subject of future medical expenses as a result of the accident.
In the matter sub judice, a review of the record indicates a clear deficiency in the future medicals awarded by the jury. As we noted in our previous discussion, the record indicates nothing more than a great likelihood that, to be made whole again, Plaintiff is a candidate for at least two surgical procedures and further psychiatric counseling. The degree of certainty is readily established by testimony provided at trial. Accordingly, we agree with Plaintiff's specific calculations asserted, to wit:
PSYCHIATRIC CARE:
Including two years therapy at $2,500.00 per year and twenty-four months of psychiatry sessions at $100.00 per month, plus medication for two years at $100.00 per month, all equaling $9,800.00.
TMJ CARE:
Including right and left side open surgery at $4,600.00 per side, cost of hospital stay at $10,000.00, anesthesiologist's fee at $3,000.00, post-surgery MRI at $1,100.00, ten sessions of post-operative physical therapy at $1,100.00, and twenty years of splint therapy requiring four visits per year at $68.00 per visit, totaling $29,840.00.
BACK SURGERY:
Including laminectomy surgery at $20,000.00 and post-operative care of $10,000.00, equaling $30,000.00.
We accordingly award to Plaintiff special future damages in the amount of $69,640.00.

II. Plaintiff's Assignments of Legal Error Against the Trial Court
Plaintiff asserts the trial court committed legal error when it removed from the jury's consideration Plaintiff's claim for loss of enjoyment of life. She now seeks an award of $20,000.00 for the same; additionally, Plaintiff claims legal error was again made by the trial court when it failed to award her attorney's fees and expenses, pursuant to La.Code Civ.P. art. 1472.
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La. 1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. See Lasha, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Lasha, 625 So.2d at 1006.
Evans v. Lungrin, 97-0541 (La.2/6/98); 708 So.2d 731, 735.

A. Loss of Enjoyment of Life
Plaintiff argues legal error where the trial judge refused her request to have listed on a special jury form a category for loss of enjoyment of life.
In Richard v. Teague, 92-17 (La.App. 3 Cir. 5/4/94); 636 So.2d 1160, writ denied, 94-1934 (La.11/11/94); 644 So.2d 388, reconsideration *1257 denied, 94-1934 (La.12/16/94); 648 So.2d 384, this court affirmed the trial judge's amplification of damages from the jury's $30,000.00 to $110,00.00 for the plaintiffs loss of enjoyment of life. The Richard court, finding the testimony of the plaintiff, his family and several experts established sufficient evidence to support the claim, explained "[c]learly, loss of enjoyment of life may be included within the category of general damages. However, it is not, of necessity, duplicative of `physical and mental pain and anguish, past and future, and any permanent disability.'" Id. at 1174. The Richard court then acknowledged that a reviewing court is required to focus on the total award and not on each individual item. Id., citing Andrews v. Mosley Well Service, 514 So.2d 491 (La.App. 3rd Cir.), writ denied, 515 So.2d 807 (La.1987). Defendant also cites Andrews for the principle that this reviewing court should only look at the total award. And so we turn to consider Andrews. In Andrews, the appellant argued that the award of loss of enjoyment of life was duplicative. This court disagreed and explained:
We reject this argument for two reasons. First, the trial judge went to some length in his instructions explaining what "loss of enjoyment of life" meant, and how it differed from pain and suffering. Second, the test of whether there was an abuse of discretion requires us to focus on the total award, and not on item by item.
Andrews at 499.
In the matter before us, by refusing to give the requested jury interrogatory, the trial judge deprived the jurors of the opportunity to consider the distinctions between loss of enjoyment of life and the general damages of pain and suffering. Where the total award given does not provide for this separate and distinct consideration, we are compelled to find legal error. Accordingly, in light of the jurisprudence we find after a de novo review, the record supports an award to Plaintiff of $20,000.00 for the general damages of loss of enjoyment of life.

B. La.Code Civ.P. art. 1472
Plaintiff argues that she is due reasonable expenses and attorney's fees incurred while proving Defendant's liability, the proof of which was made necessary by Defendant's refusal to admit liability in his response to Plaintiffs Request for Admissions. Plaintiff argues in light of Defendant's admission of liability during closing arguments, lack of a presentation of affirmative defenses at trial and Defendant's failure to overcome the legal presumption of his negligence where his vehicle left its proper lane of travel, La.Code Civ.P. art. 1472 should apply to sanction his refusal to admit liability. La.Code Civ.P. art 1472 provides:
If a party fails to admit the genuineness of any document or the truth of any matter as requested under Article 1466, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making that proof, including reasonable attorney's fees. The court shall make the order unless it finds that the request was held objectionable pursuant to Article 1467, or the admission sought was of no substantial importance, or the party failing to admit had reasonable ground to believe that he might prevail on the matter, or there was other good reason for the failure to admit.
The trial judge, in his reasons for judgment, explained his denial of Plaintiff's La.Code Civ.P. art. 1472 claim, and we note his discussion, in part:
Plaintiff's counsel had sufficient notice of Defendant's `reasonable ground to believe he might prevail on the matter' of at least comparative fault. That alone is `good reason for his failure to admit' to both Requests for Admissions per C.C.P. Art. 1472. Furthermore, Defendant *1258 `qualified' his denials in the very next line in his Answers to Interrogatories. When read together, as they appear on the document, Defendant's denials are not general in nature, but qualify his denial of liability to `[doing] the best he could under the emergency condition created,' and qualify his denial that Plaintiff was not at fault to `[her] own admission [that] she was speeding ... [and] could have taken evasive action to avoid the subject accident.'
From the little jurisprudence dealing with the application of La.Code Civ.P. art. 1472, it is apparent the article is not an often used vehicle to remedy violations of La.Code Civ.P. art. 1466. One of the most recent applications of the article appears in the Fourth Circuit in Boseman v. Orleans Parish School Board, 98-1415 (La.App. 4 Cir. 1/6/99); 727 So.2d 1194, where the reviewing court sanctioned the school board $1,000.00 for expenses and attorney fees incurred as a result of its failure to admit that two students hit the plaintiff and knocked her out of the way. The Boseman court discussed:
The failure to properly admit a fact not in dispute causes serious injury to the opposing party, the most important of which is the fact that it causes excessive adversarial conduct on the part of lawyers; this in turn leads to increased costs, delay, disrespect for the law, unprofessional conduct, and disillusionment with the practice of law.
Id. at 1198.
In Addison v. Thompson, 556 So.2d 195 (La.App. 2 Cir.), writ denied, 559 So.2d 1386 (La.1990), the court awarded the appellant $1,000.00 in attorney's fees under La.Code Civ.P. art 1472, made necessary by the defendant's failure to admit that he in fact sold the property to the plaintiff, that he did not own such property and that he previously sold the property to the City of Monroe in 1971. In Addison, the court explained that while the defendant may have believed the matters of which admissions were requested presented genuine issues for trial, such was insufficient and sanctionable under La.Code Civ.P. art. 1472, where the truth of the matters sought were evident from the records executed by the defendant.
In New Orleans Public Service, Inc. v. Checker Cab Co., 332 So.2d 489 (La.App. 4 Cir.1976), the court assessed damages for expenses and $100.00 in attorney's fees against the defendant who unjustifiably failed to admit his cab struck a street light pole. In New Orleans Public Service, Inc. v. Jet Cab Co., Inc., 290 So.2d 381 (La.App. 4 Cir.1974), the reviewing court reversed the trial judge's denial of the plaintiff's motion for expenses incurred in proving the defendant's liability where the defendant denied liability in his response to the plaintiff's Request for Admissions, but ultimately stipulated to liability at the beginning of trial. The court awarded the plaintiff $166.00 and explained:
The record is devoid of any reason to justify defendants' response to plaintiff's request and none has been shown in this Court. One purpose of pre trial discovery is to promote the efficient administration of justice in courts by reducing procedural technicalities and gamesmanship of counsel. Where, as in this case, the very purpose of the law is frustrated by a failure to comply with the rules, the penalty should be applied against the transgressor.
Id. at 382.
In the matter before us, Plaintiff, in seeking application of this article against Defendant, argues Defendant categorically denied Plaintiff's Request for Admission of liability. It is true, as the trial judge discussed, Defendant asserted he did the best he could under the emergency situation created and that Plaintiff was speeding and could have taken evasive action. For our review, we must consider whether the substance of these defenses materialized during trial. We find it simply did not. Defendant did not have a clear memory of what happened between the time his vehicle left his lane of travel and when he smashed into the left side of Plaintiff's vehicle. Defendant argued that he either *1259 hit a piece of rubber or his vehicle must have blown a tire. This argument is nothing more than mere guesswork and rises to the level of a sham defense. There is nothing to indicate that either of the two "emergency situations" existed. The report of the state trooper who investigated the accident revealed no mention of a flattened tire on Defendant's vehicle. We note, as Plaintiff points out, that both defense attorneys in their closing statements confessed to Defendant's undoubted liability; Defendant's attorney stated, "[h]e's responsible for the accident, and that's it. I'm telling you that." While this alone is not enough to assume Defendant did not have a legitimate argument from the onset of litigation, it does certainly support Plaintiff's argument under La.Code Civ.P. art. 1472 where the record is devoid of any legitimacy of a liability defense. On the face of the record, it is contrary to right reason to think that Defendant could somehow have proven that he was not at fault in this accident where his vehicle left his lane of travel, crossed the median and struck Plaintiff's vehicle. The needless expense incurred in proving his liability is precisely what La.Code Civ.P. art. 1472 is designed to discourage.
Plaintiff presented a detailed analysis of the expenses, particularly the depositions and/or statements of various witnesses costing $1,083.90, incurred in proving Defendant's liability. Also, with specificity, Plaintiff seeks expenses and attorney's fees which include the time spent by Plaintiffs attorney and attorney's staff in preparing and proving his case at trial, to wit:
Ped C. Kay, 100 hours @ $120.00/hour A.G. Alexander, 50 hours @ $95.00/hour Margaret Reeves, 87 hours @ $50.00/ hour
Plaintiff's seeks $20,000.00 on appeal for expenses incurred in proving Defendant's liability. After our review of the record, we find that an award of $10,000.00 for expenses and attorney's fees is warranted for the costs necessitated by Defendant's failure to admit liability under La.Code Civ.P. art. 1472.

DECREE
After a thorough review of the record and in light of the foregoing discussion, we amend the trial court ruling as follows: For the general damages of past and future physical and mental pain and suffering by Plaintiff, we raise her awards to $50,000.00 for her lower back injuries and $25,000.00 for her TMJ; for the specific future damages for treatment for her lower back, TMJ and psychological difficulties, we raise her award to $69,640.00. Additionally, after a finding of legal error where the trial judge refused to list loss of enjoyment of life as a separate injury on a special jury verdict form, we award Plaintiff $20,000.00 for this general damages award which the record amply supports. Finally, we reverse the trial court's decision which failed to find La.Code Civ.P. art. 1472 applicable to Defendant; accordingly, we award Plaintiff $10,000.00 for costs and attorney's fees associated with proving Defendant's liability made necessary by Defendant's failure to admit the same.
Costs of appeal to be paid by Defendant, Herbert Robin.
AFFIRMED AS AMENDED IN PART; REVERSED IN PART; AND RENDERED.
NOTES
[1] Reck v. Stevens, 373 So.2d 498 (La.1979).