STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

03-1009 consolidated with 03-0926

HERBERT ROBIN AND MARY A. ROBIN

VERSUS

ALLSTATE INS. CO.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 01-63098
HONORABLE PAUL JOSEPH DEMAHY, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**MOTION TO STRIKE GRANTED IN PART; AFFIRMED.**

Judy Y. Barrasso
Barrasso, Usdin, Kupperman, Freeman & Sarver, L.L.C.
909 Poydras St., Suite 1800
New Orleans, LA 70112
(504) 589-9700
Counsel for: Defendant/Appellee
    Allstate Ins. Co.

Larry Lane Roy
Preis, Kraft & Roy
P. O. Drawer 94-C
Lafayette, LA 70509
(337) 237-6062
Counsel for: Defendant/Appellee
    Marie Candice Hattan

**Ped C. Kay,  III**
**Broussard & Kay**
**P. O. Drawer 3308**
**Lafayette, LA 70502**
**(337) 232-1666**
**Counsel for: Plaintiff/Appellant**
**Herbert Robin**
**Mary A. Robin**

**Russel Oliver Primeaux**
**Kean, Miller, Hawthorn, D'Armond, McCowan, & Jarman**
**P. O. Box 3513**
**Baton Rouge, LA 70821-3513**
**(225) 387-0999**
**Counsel for: Defendant/Appellee**
**Computer Sciences Corp.**

**SAUNDERS, Judge.**

This is an action by insureds against their automobile liability insurer for damages resulting from the insurer's alleged breach of contract, bad faith, and various tort claims. Mr. Robin appeals the trial court's ruling sustaining Allstate's exception of no cause of action dismissing Mr. Robin's tort claims against Allstate. Mr. Robin also appeals the trial court's ruling in Allstate's favor, dismissing Mr. Robin's remaining claims with prejudice. We affirm the rulings of the trial court.

## FACTS

The facts of the accident giving rise to this action, and much of the procedural history of this matter, have been presented in *Knepper v. Robin*, 99-95 (La.App. 3 Cir. 11/17/99), 745 So.2d 1248, *writ granted in part and judgment rev'd in part*, 99-3572 (La. 2/18/00), 754 So.2d 955, and *Robin v. Allstate Ins. Co.*, 02-689 (La.App. 3 Cir. 2/5/03), 844 So.2d 41, *writ denied*, 03-1818 (La. 10/17/03), 855 So.2d 763. The relevant facts are as follows:

> *Knepper*, 745 So.2d at 1250, sets out the facts for the underlying automobile accident which is the source of the present lawsuit as follows:
>
>> On June 15, 1994, Elizabeth Knepper, hereinafter "Plaintiff," was involved in an automobile accident with Herbert Robin, hereinafter "Defendant," which occurred on Interstate 10 in St. Martin Parish. Defendant was operating a Chevrolet Blazer, traveling in the eastbound passing lane, when his vehicle crossed the grass median and struck Plaintiff's Honda Civic, which was traveling in the westbound passing lane. Defendant's vehicle struck the side of Plaintiff's vehicle, sending her Honda Civic spinning. Defendant's truck was totaled, and Plaintiff's vehicle was smashed and fire damaged. Plaintiff was flown by helicopter from the scene of the accident to the Lafayette General Medical Center where she received treatment; she was not held overnight. She returned two days later complaining of left shoulder pain. She was ultimately treated by various doctors for TMJ, an extruded disc fragment in her lower back and depression.
>>
>> Knepper was awarded $45,500 in general damages and $26,500 for future medical expenses. This court increased the damage awards by

a total of $64,640, for a total damage award of $164,640. This court also awarded "$10,000 for costs and attorney's fees associated with proving Defendant's liability made necessary by Defendant's failure to admit the same." *Id.* at 1259. This award for costs and attorney's fees was reversed by the supreme court. Therefore, the final judgment was $64,640 in excess of the $100,000 policy limits issued by Allstate covering Mr. Robin's liability for this accident.

The present litigation commenced on November 16, 2000, when the Robins filed suit against Allstate for bad faith damages under La.R.S. 22:658 and 22:1220, breach of contract damages, and general tort damages. An amending petition was filed naming M. Candace Hattan and M. Candace Hattan, a Professional Law Corporation, as defendants on December 26, 2001.

*Robin*, 844 So.2d at 44.

The trial court granted an exception of no cause of action and dismissed M. Candice Hattan and M. Candice Hattan, a Professional Law Corporation, finding that, under La.R.S. 9:5606, the action by the Robins was perempted. Prior to trial , the trial court also granted Allstate's exceptions of no cause of action and dismissed all of the Robins' tort claims with prejudice. After a six-day trial on the merits concerning Mr. Robin's allegations of bad faith and breach of contract, Judge deMahy held that Allstate's actions were not arbitrary or capricious, and that the settlement offers made by Allstate were reasonable at the time they were made.

In his ruling during the trial on the merits, the Judge deMahy stated:

In considering the evidence presented, much emphasis was placed on the casualty core processing redesign which was adopted by Allstate, and use of the Colossus computer program in assessing cases. The use of the Colossus computer program, based on the evidence that was presented, was not the exclusive method of determining evaluation, but was a tool used by adjusters, among others.

In deciding whether or not Allstate was arbitrary and capricious or acted in bad faith in failing to settle the claim within policy limits, their action or inaction must be considered in light of the information that they had or should have had at the time these decisions were made. In considering what information they had at various times and what their assessment of the damages were on each of those occasions, I find that they were not arbitrary and capricious in failing to settle at policy limits,

2

which was the only offer that was ever made by the plaintiff, was to settle at the policy limits. At the various times, the offers that were made by Allstate were reasonable considering the information available.

And the handling of the defense by Candace Hattan and the Allstate adjusters, I find did not breach their obligation to defend Mr. Robin. Therefore, I will dismiss the plaintiff's claims at his cost.

Mr. Robin presents the following assignments of error for our review:

1.     The trial court erred, as a matter of law, when it granted Allstate's Exception of No Cause of Action dismissing Robin's tort claims, including those tort theories for breach of good faith and fair dealing, breach of fiduciary duty, bad faith/negligence/intentional [sic], intentional infliction of emotional distress, and abuse of process.

2.     The trial court erred when it decided that Allstate was not liable for a breach of contract claim based on the facts of this case.

3.     The trial court erred when it decided that Allstate did not act in bad faith when handling Robin's underlying claim in the *Knepper* matter.

4.     The trial court erred when it decided that Allstate's policies, practices and procedures did not constitute bad faith and/or breach of contract and/or a tort based on the facts of this case.

5.     The trial court erred when it failed to give an adverse presumption to Allstate's decision not to call Ms. Christine Sullivan after plaintiff's expert testified regarding Allstate's policies, practices, and procedures.

6.     The trial court erred when it excluded Allstate's Implementation Training Manual in light of the trial court's previous order.

7.     The trial court erred when it failed to sanction Allstate for its intentional violation of a court order with regard to certain documents it was ordered to produce in discovery.

8.     The trial court erred when it failed to sanction Allstate for thwarting plaintiff's discovery efforts.

9.     The trial court erred when it admitted certain inadmissable evidence, including but not limited to certain issues raised in plaintiff's motion in limine.

10.    The trial court erred when it dismissed plaintiff's case and failed to award damages.

**STANDARD OF REVIEW**

3

We begin by noting the well established rules of appellate review of jury and trial court decisions.

> It is well settled that a court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. . . . Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. . . .
>
> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings;  for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.

*Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989) (citations omitted).

> [T]he appellate court's disagreement with the trial court, alone, is not grounds for substituting its judgment for that of the trier of fact. *Borden, Inc. v. Howard Trucking Co., Inc.*, 454 So.2d 1081 (La.1983).  If the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Rosell*, *supra*.  Where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. *Id*.; *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978).

*Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

## DISCUSSION

### Allstate's Motion to Strike

We begin by addressing the preliminary matter of Allstate's Motion to Strike, which was referred on the merits.  In its motion, Allstate requests that we strike certain elements of Mr. Robin's brief, including several citations to proffered documents as well as their corresponding arguments, the section entitled "Allstate's Discovery Abuse", and exhibits C, D, E, and F of Mr. Robin's brief.  We grant Allstate's motion

4

with respect to exhibits C through F of Mr. Robin's brief, as they are not a part of the record on appeal. We take notice of these documents to the extent that they are discussed in the trial transcript or appear in the trial record, however, the documents attached to the Robins' brief will be stricken. We deny Allstate's motion with respect to Mr. Robin's references to proffered documents. We also deny Allstate's motion with respect to Mr. Robin's argument entitled "Allstate's Discovery Abuse." However, we note that following our thorough review of the record and the trial transcript, we find no evidence of discovery abuse on the part of Allstate during the course of this trial. Therefore, we find that Mr. Robin's argument that the trial court erred in failing to impose sanctions against Allstate is without merit.

**Mr. Robin's Assignments of Error**

Mr. Robin alleges that Allstate failed to fulfill its contractual obligation to defend him in the suit filed by Ms. Knepper following the automobile accident of June 15, 1994. He also claims that Allstate acted in bad faith in the handling of his claim, and was arbitrary and capricious in failing to settle the claim within the policy limits when first given the opportunity to do so.

Mr. Robin claims that Allstate's actions in handling this matter constitute bad faith and are a violation of La.R.S. 22:658 and 1220.

La.R.S. 22:658 states, in relevant part:

> A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest.
>
> . . . .
>
> (3) Except in the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim and of a claim for reasonable

5

medical expenses within fourteen days after notification of loss by the claimant. In the case of catastrophic loss, the insurer shall initiate loss adjustment of a property damage claim within thirty days after notification of loss by the claimant. Failure to comply with the provisions of this Paragraph shall subject the insurer to the penalties provided in R.S. 22:1220.

And La.R.S. 22:1220 provides, in relevant part:

A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

(4) Misleading a claimant as to the applicable prescriptive period.

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

*Assignment of Error Number 1 -- Exception of No Cause of Action*

In his first assignment of error, Mr. Robin argues that the trial court erred as a matter of law by granting Allstate's exception of no cause of action and dismissing the Robins' tort claims. Allstate argues that, the supreme court's ruling in *Theriot v. Midland Risk Ins. Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184, La.R.S. 22:1220(B) provides an exclusive list of the "extra-contractual or tort-like" claims actionable

against an insurer for an alleged breach of the insurer's duty of good faith and fair dealing. As Mr. Robin does not present any of the claims allowable under La.R.S. 22:1220(B), he has failed to state a valid cause of action as to his tort claims.

We find the trial court did not err in granting Allstate's exceptions of no cause of action with respect to the Robins' tort claims. Additionally, even had the trial court's grant of no cause of action been in error, for the reasons stated below we find no breach of Allstate's contractual duty to defend Mr. Robin, and no negligence or bad faith in Allstate's inability to settle the claim below Mr. Robin's policy limits. Therefore, the Robins' tort claims are without merit.

*Assignments of Error Numbers 2-4 -- Bad faith/Breach of Contract*

We next address Mr. Robin's assignments of error concerning the trial court's decision, following a trial on the merits, rendering judgment in favor of Allstate and against Mr. Robin and dismissing his claims with prejudice. Mr. Robin claims that Allstate acted in bad faith when handling the claim involving his accident with Ms. Knepper. Additionally, Mr. Robin argues that Allstate's failure to settle his claim with Ms. Knepper at or below his policy limits constitutes a breach of its insurance contract with him.

The threshold question in this matter is whether Allstate failed to make reasonable efforts to settle the matter before and during the trial. The question of the reasonableness of Allstate's various settlement offers, and its refusal of offers made by Ms. Knepper, must be evaluated on the basis of whether they were reasonable at the time they were made or rejected. The Robins insist that Allstate repeatedly refused reasonable settlement offers made by Ms. Knepper and forced the matter to trial unnecessarily. He contends that Allstate's actions unnecessarily exposed him to an excess judgement.

7

Allstate argues that, given the information it possessed at the time each settlement offer was on the table, its actions were reasonable. Allstate insists that it conducted a thorough investigation, and made several attempts to obtain Ms. Knepper's medical information and to settle the claim before trial. It counters that Mr. Kay, the attorney for Ms. Knepper in the original matter, and now the attorney for the Robins here, repeatedly failed to respond to its requests for information and attempted to hide IME results. Allstate contends that it only had two opportunities to settle at Mr. Robin's policy limits, and at the time the offers to settle were made no one at Allstate reasonably believed the case presented a danger of excess exposure or even approached the policy limits. Allstate notes that, even at trial, the original jury verdict was within the policy limits and the trial judge refused to increase the award upon Mr. Kay's request for an excess verdict through a JNOV motion.

Determining whether an insurer's refusal to settle a claim prior to going to trial was arbitrary and capricious is highly fact specific. For this reason, the findings of the trial court should not be overturned on appeal absent clear error. *Rogers v. Government Employees Ins. Co.*, 598 So.2d 670 (La.App. 3 Cir.), *writ denied*, 605 So.2d 1364 (La.1992). It is well settled within this circuit that a determination of whether an insurer's refusal to pay a claim is arbitrary and capricious, or without probable cause, hinges on the facts known by the insurer at the time a decision to refuse to pay the claim is made. *Myers v. Broussard*, 96-1634 (La.App. 3 Cir. 5/21/97), 696 So.2d 88. Due to the penal nature of La.R.S. 22:1220, the statute must be strictly construed. *Theriot*, 694 So.2d 184. Additionally, where the insurer has presented a reasonable defense for its failure to timely tender payment, the penalty provisions of La.R.S. 22:1220 should not apply. *Perkins v. Guarantee Nat'l Ins. Co.*, 95-229 (La.App. 3 Cir. 11/2/95), 667 So.2d 559, *writ denied*, 96-759 (La. 5/31/96),

8

673 So.2d 1033.

In *Smith v. Audubon Ins. Co.*, 95-2057, p. 7-10 (La. 9/5/96), 679 So.2d 372, 376-77, the supreme court stated:

> In the absence of bad faith, a liability insurer generally is free to settle or to litigate at its own discretion, without liability to its insured for a judgment in excess of the policy limits. William Shelby McKenzie & H. Alston Johnson, III, *15 Louisiana Civil Law Treatise-Insurance Law and Practice § 218* (1986). On the other hand, a liability insurer is the representative of the interests of its insured, and the insurer, when handling claims, must carefully consider not only its own self-interest, but also its insured's interest so as to protect the insured from exposure to excess liability. *Holtzclaw v. Falco, Inc.*, 355 So.2d 1279 (La.1978) (on rehearing). Thus, a liability insurer owes its insured the duty to act in good faith and to deal fairly in handling claims. *Id.*
>
> . . . .
>
> Thus, the determination of whether the insurer acted in bad faith turns on the facts and circumstances of each case. Of course, an insurer is not obliged to compromise litigation just because the claimant offers to settle a claim for serious injuries within the policy limits, and its failure to do so is not by itself proof of bad faith. The determination of good or bad faith in an insurer's deciding to proceed to trial involves the weighing of such factors, among others, as the probability of the insured's liability, the extent of the damages incurred by the claimant, the amount of the policy limits, the adequacy of the insurer's investigation, and the openness of communications between the insurer and the insured. Nevertheless, when an insurer has made a thorough investigation and the evidence developed in the investigation is such that reasonable minds could differ over the liability of the insured, the insurer has the right to choose to litigate the claim, unless other factors, such as a vast difference between the policy limits and the insured's total exposure, dictate a decision to settle the claim.

Additionally, in *Myers*, 696 So.2d at 103, this court held:

> To be successful under La.R.S. 22:658, a plaintiff must prove that the insurer received satisfactory proof of loss, failed to pay the claim within thirty days after receiving sufficient proof of loss, and such failure to timely tender a reasonable amount was arbitrary and capricious. *Khaled*[v. *Windham*], 94-2171[(La.App. 1 Cir. 6/23/95)]; 657 So.2d 672. The supreme court has defined "sufficient proof of loss" as follows:
>
> > that which is sufficient to *fully apprise* the insurer of the insured's claim. To establish a "satisfactory proof of loss" of an

9

uninsured/underinsured motorist's claim, the insured must establish that the insurer received sufficient facts which fully apprise the insurer that (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) that he was at fault; (3) that such fault gave rise to damages; and (4) establish the extent of those damages.

*McDill v. Utica Mut. Ins. Co.*, 475 So.2d 1085, 1089 (La.1985) (citation omitted).

Whether a refusal to pay a claim is arbitrary, capricious, or without probable cause hinges on the facts known to the insurer at the time of its refusal to pay the claim. *Wells v. Houston*, 95-202 (La.App. 3 Cir. 6/7/95); 657 So.2d 474, *writ denied*, 95-1733 (La.10/13/95); 661 So.2d 500. The determination of whether an insurer's handling of a claim is arbitrary or capricious is one of fact, which should not be disturbed on appeal unless it is manifestly erroneous. *Khaled*, 94-2171; 657 So.2d 672. However, the provisions of La.R.S. 22:658 are penal in nature and should be strictly construed. *Perkins v. Guaranty Nat'l Ins. Co.*, 95-229 (La.App. 3 Cir. 11/2/95); 667 So.2d 559, *writ denied*, 96-0759 (La.5/31/96); 673 So.2d 1033. If an insurer, in good faith, has presented a reasonable defense for its failure to timely tender payment, then these penalty provisions should not apply. *Id*.

In order to fully evaluate the validity of Mr. Robin's claim it is necessary look at the history of settlement attempts in this matter and determine what information Allstate had at the time the various offers were made. Based on uncontroverted testimony presented at trial, Allstate initiated investigation of the Knepper/Robin accident June 16, 1994, the day after it occurred. On June 17, 1994 Allstate met with Mr. Robin and took a taped statement from him about the accident. Allstate requested an offer to settle from Ms. Knepper on June 27, 1994, approximately two weeks after the accident. She refused any attempt to settle, indicating that she wanted to consult an attorney. She retained Mr. Kay immediately and he made no response to this initial attempt by Allstate to settle.

Following our review of the trial transcript and the record on appeal, it appears that what followed was a series of attempts by Allstate to obtain medical information about Ms. Knepper and her medical condition, as well as repeated attempts to obtain

10

settlement offers from her attorney. There appears to have been great difficulty contacting Ms. Knepper's attorney, gaining access to her available medical records, and obtaining any settlement package from her. This continued for a span of approximately two years, until July of 1996, when Allstate was notified by Ms. Knepper's attorney that he was working on a settlement offer.

On August 2, 1996, Allstate received Ms. Knepper's first settlement package. In that offer she requested settlement of the claim at Mr. Robin's $100,000.00 policy limits. In this original settlement offer from Ms. Knepper her total medical expenditures to date were $7,133.19. She stated a probable need for future surgical treatment of her TMJ and back, with an estimate of future medical expenditures of $30,000.00, and finally, estimated general damages of $135,000.00. Mr. Robin argues that this original settlement package constituted sufficient proof of loss on the part of Ms. Knepper concerning her medical status, and Allstate's decision to refuse this settlement offer was arbitrary and capricious.

Allstate notes that the documentation provided with this settlement offer from Ms. Knepper primarily included medical bills for past medical treatment. There was a very limited amount of actual medical evaluation and diagnosis provided at this time, and the medical evaluations provided indicated splint therapy was recommended for TMJ treatment. There is no reference in any of the medical evaluations provided with the August settlement offer that future surgical treatment will be required, or even recommended, for the TMJ. Additionally, the majority of the medical evaluation with regards to her back injuries came from Dr. E. A. Blake, a chiropractor. There is no recommendation in the medical records provided for any future neck or back surgery. In fact, the only medical evaluation provided from an orthopaedic physician at this point was from a Dr. Richard Shure at Jewett Orthopaedic Clinic in Orlando

11

Florida. The focus of this evaluation was exclusively addressing Ms. Knepper's complaints of left thumb pain resulting from the accident. There is no mention in this evaluation of any neck or back problems. Allstate found Ms. Knepper's failure to mention her back pain to her orthopaedic physician suspect. At this point Allstate had repeatedly evaluated the claim, continuing to increase the value of the claim from its initial $2,000.00 estimate immediately following the accident, to between $18,000.00 and $24,000.00 by the time this first offer was received from Ms. Knepper. As a result of Allstate's assessment of the value of the claim, as well as the factors mentioned above, Allstate refused this offer of settlement. Allstate responded on September 24, 1996, with a counter offer to settle at $22,000.00, a figure Allstate felt reasonable based on the medical expenses incurred to date and the evidence they had of reasonable and necessary future medical expenses.

There were no further attempts by Ms. Knepper to settle the matter until July 1, 1997, when she once again sought a settlement from Allstate of $100,000.00, plus judicial interest and costs. This offer remained open for 15 days. At the time Ms. Knepper presented this offer her past medical expenses totaled $10,775.00. Allstate notes that she had missed no significant amount of work, had not been hospitalized, and still had no medical evaluations or doctor recommendations suggesting that she undergo jaw surgery for TMJ or back surgery.

Allstate claims that, at the time of this second offer it had not received any updated medical records regarding Ms. Knepper's injuries. Allstate states that additional medical records and reports were not received until July 23, 1997, more than a week after the July 1, 1997 settlement offer had expired. Even after receiving these updated medicals Allstate argues that they still did not support Ms. Knepper's policy limit demand. Dr. Kornberg, her orthopaedic surgeon in Florida, had not

12

recommended surgery for her back, prompting Ms. Knepper to seek an independent medical evaluation from Dr. Freidman, another orthopaedic physician, in September of 1995. Despite the existence of this medical evaluation prior to the first settlement offer made by Ms. Knepper in August of 1996, Allstate did not learn of it until the July 1, 1997 offer. During his evaluation of Ms. Knepper in 1995 Dr. Freidman diagnosed her with chronic neck and low back pain, stating that the patient had very scant symptoms at the time of the evaluation. Dr. Freidman did not feel there was a need for further medical treatment and indicated that Ms. Knepper was at maximum medical improvement.

Ms. Knepper's verified past medical expenses at the time of the July settlement offer totaled $11,789.00, a large portion of which was transportation and emergency room expenses on the day of the accident, and diagnostic services including MRIs. This settlement package also included, for the first time, a psychiatric evaluation. Allstate particularly notes that Ms. Knepper did not seek psychiatric care, a significant source of her requested future medical expenses, until February of 1997, almost three years after the accident. Allstate argues that this lapse in treatment raised a significant question of causation.

Allstate continued to reevaluate the value of Ms. Knepper's claim, and at the time it received the settlement offer on July 1, 1997, it had increased the evaluation of the claim to a range between $50,000.00 and $60,000.00. Allstate still felt the evidence did not support a policy limits settlement for Ms. Kepper's claim, and still had not received medical reports or any diagnosis indicating that jaw or back surgery was recommended as a part of Ms. Knepper's future medical treatment.

The trial date was set for October 28, 1997. Depositions of Ms. Knepper's Florida doctors, Dr. Kornberg, Dr. Blankemeier, and Dr. Fusilier, were originally set

13

for August 14, 1997. At the request of Ms. Knepper's attorney, these depositions were repeatedly rescheduled and postponed, finally occurring October 24, 1997, the Friday before the trial was to begin. Ms. Knepper underwent another MRI on October 27, 1997, the day before trial. At this time Allstate re-evaluated the claims at $75,000.00 to $85,000.00, after including the last minute updated information regarding Ms. Knepper's medical status. Ms. Hattan, Allstate's attorney, sent a letter to Ms. Knepper's attorney attempting to settle the claim for $75,000.00 in the hopes of avoiding trial. She received no response to this settlement offer from either Ms. Knepper or her attorney.

During the trial Mr. Robin's testimony gave Allstate and its attorney some concern. He was described by the trial judge as "a confused, combative, irritated witness." Additionally, while an October 15, 1997 letter from Dr. Clifton Shepherd to Ms. Knepper's attorney outlining her medical condition included no recommendation for back surgery, during his testimony at trial less than three weeks later Dr. Shepherd changed his diagnosis to include a recommendation that Ms. Knepper undergo back surgery. In addition to these concerns, one of Mr. Robin's witnesses, expected to support his contention that he was not intoxicated the morning of the accident, disappeared.

After these events occurred, Allstate attempted to settle with Ms. Knepper for $90,000.00. Ms. Knepper refused anything below Mr. Robert's policy limits, plus legal interest and costs, *in addition* to State Farm's $25,000.00 UM limit and their PIP limits of $5,000.00, as well as punitive damages and an amount for being arbitrary and capricious. Allstate's understanding at the time of this offer was that it required acceptance by both Allstate and State Farm. Allstate could not settle with Ms. Knepper, even at their policy limits, unless State Farm was also willing to settle. State

Farm testified that they were unwilling to settle at this point because they evaluated the value of the claim at $50,00.00 to $75,000.00. At this time Allstate offered to pay its policy limits plus judicial interest and costs independant of any settlement agreement with State Farm, but Ms. Knepper refused to accept unless and until State Farm also agreed to settle.

Allstate's position, and its evaluations of the claim at various stages throughout the life of the claim, are supported by uncontroverted expert testimony. Mr. Robin's attempts to call Allstate's analysis procedure into question during trial were unconvincing, and nothing was brought to light that would indicate that Allstate was arbitrary or capricious in failing to accept Ms. Knepper's various settlement offers.

We cannot say that choosing to litigate this claim under the specific circumstances of this case was a breach of Allstate's duty or obligations to its insured, nor was it an act of bad faith. There was a clear turning point in this matter during the trial, immediately following the testimony of Dr. Shepherd and Mr. Robin. As soon as Allstate was aware of this, it made attempts to settle near and at the policy limit. Those offers were refused by Mr. Kay. After our thorough review of the record, Allstate's actions were reasonable at the time, and we see no evidence of arbitrary or capricious behavior on the part of Allstate or its agents handling this matter.

*Assignment of Error Number 5 -- Adverse Presumption*

Mr. Robin also argues that the trial court erred when it failed to give an adverse presumption to Allstate's decision not to call Ms. Christine Sullivan, an Allstate employee that Allstate had listed as a rebuttal witness to Mr. Robin's expert, Gary Fry. Allstate argues that the testimony from other Allstate employees was sufficient to prove their case, and Ms. Sullivans' testimony was no longer necessary to rebut Mr. Robins' expert. Allstate contends that this was a judgment call by counsel made in

15

light of developments at trial, and is not susceptible to an adverse presumption. *Paul v. Ford Motor Co.*, 392 So.2d 704 (La.App. 3 Cir. 1980).

We find no error in the trial court's refusal to apply an adverse presumption in this instance.

*Assignment of Error Number 6 -- Exclusion of Allstate's Implementation Training Manual*

Mr. Robin proffered this manual during trial following the court's refusal to admit it into evidence. He argues that the trial court's refusal to admit this manual was error, and asks us to reverse the trial court's ruling. After our review of the trial record and transcript, the trial court's exclusion of the manual that Mr. Robin sought to introduce was based on problems with its authentication, which Mr. Robin failed to rectify. We find no error in the trial court's actions on this issue, and find this assignment of error is without merit.

*Assignments of Error Numbers 7 and 8 -- Evidence and Discovery*

On review of the trial record, we find no evidence of any discovery abuse on the part of Allstate, and no evidence that Allstate failed to comply with any court orders concerning document production. Therefore, these assignments of error are also without merit.

*Assignment of Error Number 9 -- Admission of Inadmissable Evidence*

Mr. Robin also claims that the trial court erred in "admitting certain inadmissable evidence, including but not limited to certain issues raised in plaintiff's motion in limine." Mr. Robin specifically refers to reports of Mr. Preston Cloyd, who represented State Farm in the *Knepper* matter. Mr. Robin claims that the testimony of Mr. Cloyd regarding his evaluations and/or reports issued in connection with the Knepper case are irrelevant in light of this court's decision in *Knepper*, 745 So.2d

16

1248. We disagree. Our decision in *Knepper* did not address the reasonableness of Allstate's refusal to settle Knepper's claim at the time her various offers were made. Mr. Cloyd's testimony specifically addresses the reasonableness of Allstate's claim evaluations at the time Ms. Knepper's various offers were on the table. Therefore, we find no error in the trial court's decision to allow this testimony.

Mr. Robin also refers to Ms. Knepper's discovery deposition and written answers to certain questions by Allstate. He claims that Ms. Knepper's deposition and the written answers were aimed at learning whether she had undergone any treatment and/or surgery since the trial. He argues that this information is irrelevant to the issue of whether Allstate's actions in refusing various settlement offers were reasonable at the time they were made.

We agree that this evidence would be irrelevant to the matter presently before this court, however, as discussed above there is sufficient evidence to support the trial court's judgment. Therefore, any error in admission of this evidence was harmless.

*Assignment of Error Number 10 -- Failure to Award Damages*

As we find no bad faith or breach of contractual duty on the part of Allstate, this assignment of error is also without merit.

*Costs Awarded to Allstate*

The trial court dismissed all of Mr. Robin's claims at his cost. Following this judgment by the trial court, Allstate filed a Rule to Tax Costs, and the trial court awarded additional costs, including certain deposition costs, and expert fees incurred by Allstate. We have affirmed the trial court's judgment that Allstate was "not arbitrary and capricious in failing to settle at policy limits," we find no abuse of the trial court's great discretion in awarding these costs against Mr. Robin.

**CONCLUSION**

17

We affirm the trial court's grant of Allstate's Exception of No Cause of Action and dismissal of the Robins' tort claims. We affirm the judgment of the trial court below and its decision to award reasonable costs to Allstate. We find no breach of Allstate's duty to Mr. Robin, and we deem Allstate's decisions and actions with respect to the settlement of this matter neither arbitrary nor capricious. All costs of this appeal are cast to Mr. Robin.

**MOTION TO STRIKE GRANTED IN PART; AFFIRMED.**