844 So.2d 41 (2003)
Herbert and Mary A. ROBIN
v.
ALLSTATE INSURANCE CO.
No. 02-689.
Court of Appeal of Louisiana, Third Circuit.
February 5, 2003.
Rehearing Denied May 28, 2003.
*43 Judy Y. Barrasso, Stone, Pigman, Walther, et al, New Orleans, LA, for Defendant/Appellee: Allstate Ins. Co.
Larry Lane Roy, Preis, Kraft & Roy, Lafayette, LA, for Defendant/Appellee: Marie Candice Hattan.
Ped C. Kay III, Broussard & Kay, Lafayette, LA, for Plaintiffs/Appellants: Herbert Robin, Mary A. Robin.
Russel Oliver Primeaux, Kean, Miller, Hawthorne, DÁrmond, McCowan & Jarman, L.L.P., Baton Rouge, LA, for Defendant/Appellee: Computer Sciences Corp.
Court composed of ULYSSES GENE THIBODEAUX, MICHAEL G. SULLIVAN, and BILLY HOWARD EZELL, Judges.
EZELL, J.
This is an action by insureds against their liability insurer for damages sustained when a judgment in excess of the policy limits was rendered against the husband in a previous automobile tort action. The case involves issues of an insurer's duty to defend and settle a claim in addition to issues of whether a claim was timely filed against an attorney.
Herbert and Mary Robin filed suit against Allstate alleging that Allstate's actions in defending Mr. Robin in a previous matter exposed the Robins to just under $100,000 over and above the insurance policy's limits. Knepper v. Robin, 99-95 (La. App. 3 Cir. 11/17/99), 745 So.2d 1248, writ granted in part and denied in part, 99-3572 (La.2/18/00), 754 So.2d 955. Subsequently, *44 the Robins filed a supplemental and amending petition naming Candace Hattan, the attorney who represented Allstate and Mr. Robin in the previous suit, as a defendant.
Knepper, 745 So.2d at 1250, sets out the facts for the underlying automobile accident which is the source of the present lawsuit as follows:
On June 15, 1994, Elizabeth Knepper, hereinafter "Plaintiff," was involved in an automobile accident with Herbert Robin, hereinafter "Defendant," which occurred on Interstate 10 in St. Martin Parish. Defendant was operating a Chevrolet Blazer, traveling in the eastbound passing lane, when his vehicle crossed the grass median and struck Plaintiff's Honda Civic, which was traveling in the westbound passing lane. Defendant's vehicle struck the side of Plaintiff's vehicle, sending her Honda Civic spinning. Defendant's truck was totaled, and Plaintiff's vehicle was smashed and fire damaged. Plaintiff was flown by helicopter from the scene of the accident to the Lafayette General Medical Center where she received treatment; she was not held overnight. She returned two days later complaining of left shoulder pain. She was ultimately treated by various doctors for TMJ, an extruded disc fragment in her lower back and depression.
Knepper was awarded $45,500 in general damages and $26,500 for future medical expenses. This court increased the damage awards by a total of $64,640, for a total damage award of $164,640. This court also awarded "$10,000 for costs and attorney's fees associated with proving Defendant's liability made necessary by Defendant's failure to admit the same." Id. at 1259. This award for costs and attorney's fees was reversed by the supreme court. Therefore, the final judgment was $64,640 in excess of the $100,000 policy limits issued by Allstate covering Mr. Robin's liability for this accident.
The present litigation commenced on November 16, 2000, when the Robins filed suit against Allstate for bad faith damages under La.R.S. 22:658 and 22:1220, breach of contract damages, and general tort damages. An amending petition was filed naming M. Candace Hattan and M. Candace Hattan, a Professional Law Corporation, as defendants on December 26, 2001.
Allstate filed an exception of no right of action claiming that Mrs. Robin's claims against it were not valid. This exception was heard on February 22, 2002, and was granted by the trial court. The trial court granted the exception and signed judgment on February 7, 2002. Hattan filed an exception of no cause of action to both of the Robins' claims arguing that La.R.S. 9:5605 applied and the peremptive period had run. The trial court also granted this exception on April 19, 2002, and signed a judgment accordingly on May 14, 2002.
Prior to granting the exception of no cause of action, the Robins filed a second supplemental and amending petition on April 16, 2002, adding Allstate as a defendant in the then pending action against Hattan. Allstate then filed exceptions of res judicata and no right of action. These exceptions were heard on July 12, 2002, with the court granting both exceptions. The appeal from this judgment was lodged with this court after the other judgments were appealed, but the appeals have been consolidated. There are the three judgments before us on appeal.

NO RIGHT OF ACTION
An exception of no right of action is used to raise the question whether a plaintiff belongs to a particular class in whose exclusive favor the law extends a remedy for which a cause of action exists, or to *45 raise the issue whether plaintiff has the right to invoke a remedy which the law extends only conditionally. Greenbriar Nursing Home, Inc. v. Pilley, 93-2059 (La.5/23/94), 637 So.2d 429; La.Code Civ.P. art. 681.
Many theories of recovery were asserted by the Robins in their claim against Allstate for the damages they allege they suffered because of Allstate's actions in failing to settle the original suit and subjecting them to excess exposure. The trial court granted an exception of no cause of action finding that Mrs. Robin had no right of action against Allstate. The Robins argue that Mrs. Robin has urged various theories of recovery based in both contract and tort that are available to her even though she was not the named defendant in the Knepper suit. They argue that as long as a policy existed between the Robins and Allstate, Allstate was bound to protect both Mr. and Mrs. Robin's interests and provide whatever services were necessary to protect those interests. They further suggest that neither La.R.S. 22:658 nor La.R.S. 22:1220 provide that the insured seeking damages pursuant to these statutes had to be a named defendant in a lawsuit. The Robins also argue that Mrs. Robin is able to recover damages as a third-party beneficiary pursuant to La.R.S. 22:1220(C). Aside from the contract claims, the Robins claim that Mrs. Robin is entitled to recover tort damages for intentional infliction of emotional distress, loss of consortium, misrepresentation, abuse of process/malicious prosecution, and damage to the community pursuant to La.Civ.Code art. 2315.
Mrs. Robin's claims arise out the fact that an excess judgment was rendered against her husband exposing the community to liability. Therefore, the issue is whether Mrs. Robin has a right of action against Allstate since the community is exposed to payment of an excess judgment. We will first look to the contract of insurance entered into between Allstate and the Robins as the source of Allstate's obligations to the Robins, recognizing that an insurance contract is the law between the parties. La.Civ.Code art.1983; Pareti v. Sentry Indem. Co., 536 So.2d 417 (La. 1988).
Allstate contractually agreed to provide a legal defense for liability claims asserted against an insured person as follows: "We will defend an insured person sued as the result of an auto accident, even if the suit is groundless or false. We will choose the counsel. We may settle any claim or suit if we believe it is proper." The courts have defined these duties to an insured as follows:
Under the terms of its protection and indemnity policy, the insurer contractually agreed to provide a legal defense for liability claims against the insured within the scope of the policy. The insurer's duty to defend suits brought against its insured is determined by the allegations of the plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. Accordingly, the insurer's obligation to defend suits against its insured is generally broader than its obligation to provide coverage for damage claims. Thus, if, assuming all of the allegations of the petition to be true, there would be both coverage under the policy and liability of the insured to the plaintiff, the insurer must defend the insured regardless of the outcome of the suit. An insured's duty to defend arises whenever the pleadings against the insured disclose even a possibility of liability under the policy.

Steptore v. Masco Const. Co., Inc., 93-2064, pp. 8-9 (La.8/18/94), 643 So.2d 1213, 1218 (citations omitted).
*46 Additionally, the law recognizes that the insurer's obligation to exercise good faith in defending the insured also includes a duty to settle within policy limits if necessary to protect the insured's financial interests against excess damages beyond the insurance coverage. Smith v. Audubon Ins. Co., 95-2057 (La.9/5/96), 679 So.2d 372.
Mr. Robin was the only party sued in the underlying tort suit. Mrs. Robin was never a party to that litigation. Therefore, pursuant to the terms of the policy, and recognizing that the Allstate policy did not provide coverage to Mrs. Robin under the circumstances of the Knepper matter, we find Allstate did not have an obligation to defend or settle the claim on behalf of Mrs. Robin. The contract is clear that this obligation only extends to an insured who is sued because of an automobile accident.
We agree that Mrs. Robin is an insured under the policy, but no duties were owed to Mrs. Robins as an insured unless she was sued. The fact that the community may be ultimately liable for this excess judgment does not give Mrs. Robins any greater rights under the contract than any other insured would have.
La.R.S. 22:658 and 22:1220
The Robins also asserted a claim for bad faith damages pursuant to La.R.S. 22:658 and 22:1220. The Robins agree that there has to be an underlying claim against the insurer in order to recover under these penalty statutes. Phillips v. Patterson Ins. Co., 01-1545 (La.App. 3 Cir. 4/3/02), 813 So.2d 1191; Clausen v. Fidelity and Deposit Co. of Maryland, 95-504 (La.App. 1 Cir. 8/4/95), 660 So.2d 83, writ denied, 95-2489 (La.1/12/96), 666 So.2d 320. They argue that the Knepper suit is an underlying claim that would support their claims under both statutes.
The Supreme Court held in Cantrelle Fence and Supply Co., Inc. v. Allstate, 515 So.2d 1074 (La.1987), that an obligation arising out of the penalty statute, La.R.S. 22:658, is separate and distinct from the obligation arising out of the contractual relationship under the insurance policy. This fact was further recognized by the supreme court in Manuel v. La. Sheriff's Risk Management Fund, 95-406, p. 6 (La.11/27/95), 664 So.2d 81, 84 when it stated that "[t]he duties that [La.R.S. 22:1220] does impose upon insurers are separate and distinct from the duties mentioned in the contract of insurance."
The supreme court once again discussed the duties owed by an insurer to its insureds as follows:
While this court has never defined the precise basis of the duties owed by an insurer to its insured, we have held that they are fiduciary in nature and include the duty to discharge policy obligations to the insured in good faith, to defend the insured against covered claims and to consider the interests of the insured as paramount in every settlement. It is generally agreed that an insurer's duties run primarily in favor of its insured as an outgrowth of duties that have their foundation in the contract between the parties. It is the relationship of the parties that gives rise to the implied covenant of good faith and fair dealing.

Theriot v. Midland Risk Ins. Co., 95-2895, p. 15 (La.5/20/97), 694 So.2d 184, 193 (citation omitted).
While it is true that the obligations of an insurer to an insured under the penalty statutes are separate from the contractual provisions, these statutory duties are owed to an insured when discharging the policy obligations. Id.; Nettleton v. Audubon Ins. Co., 93-1576 (La. App. 1 Cir. 5/20/94), 637 So.2d 792. During the underlying Knepper litigation, no obligations were owed to Mrs. Robin under *47 the insurance contract because she was not sued as required by Allstate's policy of insurance. The fiduciary duties were owed to Mr. Robin, and thus, Mr. Robin was the insured entitled to the duties owed by an insurer under La.R.S. 22:658 and 22:1220.
Furthermore, Mrs. Robin cannot be considered a third-party claimant. As explained in Manuel, 664 So.2d at 85 (quoting Descant v. Adm'rs of the Tulane Educ. Fund, 93-3098, p. 2 (La.7/5/94), 639 So.2d 246, 251), "Liability policies are written for the `benefit of third parties, who suffer injury or damage because of actions of the insured.'" Mrs. Robin was not a third party who has suffered injury because of the actions of her husband; Elizabeth Knepper was the third party who was injured when Mr. Robin's vehicle impacted with her vehicle.
Tort Damages
The Robins finally argue that Mrs. Robin is entitled to recover tort damages against Allstate pursuant to La.Civ.Code art. 2315. They have alleged intentional infliction of emotional distress, loss of consortium, misrepresentation, abuse of process/malicious prosecution, and damage to the community for Allstate's failure to protect their interests in furtherance of its own.
As we have previously recognized, Allstate owed no duties to Mrs. Robin under the circumstances of this case. The law simply does not recognize a right of action by a spouse when the insurance company has breached the contractual and fiduciary duties it owes to the other spouse.
We recognize that Mrs. Robin claims that it is the community that will ultimately be responsible for the excess judgment. La.Civ.Code art. 2360. We also recognize that pursuant to La.Code Civ. P. art. 686 (emphasis supplied), that "either spouse is the proper plaintiff ... to sue to enforce a community right." However, the right to any damages, penalties, or attorney's fees that Allstate may owe is a right owed to Mr. Robin as we have discussed. The duties that were allegedly breached by Allstate were duties that were owed to Mr. Robin and not the community.
However, the law does recognize that "loss of consortium claims are derivative of the primary victim's injuries." Ferrell v. Fireman's Fund Ins. Co. 96-3028 (La.7/1/97), 646 So.2d 569,576. Although the issue of Mr. Robin's rights are not before us, Mrs. Robin has the right to assert a claim for loss of consortium as a derivative claim of her husband's tort claim against Allstate. We find that the trial court erred in granting the exception of no right of action as to Mrs. Robin's loss of consortium claim.
Based on the above reasoning, we also reverse the judgment of the trial court rendered on July 12, 2002, since we find Mrs. Robin has a right of action to assert a claim for loss of consortium.

EXCEPTION OF NO CAUSE OF ACTION
The trial court granted an exception of no cause of action in favor of M. Candice Hattan and M. Candice Hattan, a Professional Law Corporation, finding that the action by the Robins was preempted. The trial court relied on La.R.S. 9:5605 in doing so.
When considering an exception of no cause of action the well-pleaded allegations of fact are accepted as true. Everything on Wheels v. Subaru S., 616 So.2d 1234 (La.1993). Our inquiry is whether, on the face of the petition, the *48 plaintiffs are entitled to the relief sought. Id.
The Robins argue that the most obvious claim that falls out of the scope of legal malpractice is that asserted by Mrs. Robin against Hattan. They further claim that Mr. Robin's claim against Hattan is not based on legal malpractice because Hattan was hired by Allstate, not by Mr. Robin, in addition to the fact that Mr. Robin had no control over Hattan so as to constitute an attorney-client relationship.
The Robins have filed suit in this case alleging that they sustained damages due to Hattan's actions which exposed them to an excess judgment. The claims they have made against Hattan include the failure to notify, failure to advise, failure to defend Mr. Robin, failure to keep the Robins apprised of all issues including settlement offers, not appearing for oral argument at the court of appeal, and alleged concoction of a letter apprising another firm representing the Robins that an appeal was taken to obtain an unjust advantage or to cause a loss or inconvenience. The only way that Hattan could be obligated to perform these particular duties to the Robins was if she had an attorney-client relationship with them. This is obviously conduct that arises out of an engagement to provide legal services as contemplated by La.R.S. 9:5606. The mere claim that there was no attorney-client relationship will not suffice under these circumstances. If there was no attorney-client relationship, then Hattan would not have owed these particular duties to the Robins. Therefore, without determining if there was actually an attorney-client relationship between the parties because that issue is not before us, we will determine whether the trial court correctly found that the claims are preempted under La.R.S. 9:5605.
This court's judgment which increased damages above the $100,000 statutory limits was rendered on November 17, 1999. Knepper, 745 So.2d 1248. The supreme court granted writs reversing the award of costs and attorney fees and denying all other requested relief on February 18, 2000. Knepper, 754 So.2d 955. Rehearing was denied on April 17, 2000. Id. Suit against Hattan was not filed until December 26, 2001, well over a year after judgment was final.
This court in Dauterive Contractors, Inc. v. Landry and Watkins, 01-1112 (La.App. 3 Cir. 3/13/02), 811 So.2d 1242, held that both the one-year and three-year periods found in La.R.S. 9:5605 were peremptive and subject to all rules governing peremption. As provided in Subsection B, these periods may not be renounced, interrupted, or suspended. "Hence, suit must in all circumstances be brought within one year of the alleged act or one year from discovery of the alleged act as long as the act is discovered and sued upon by the end of the third year." Broussard v. F.A. Richard & Assocs., Inc., 98-1167, p. 12 (La.App. 3 Cir. 3/17/99), 732 So.2d 578, 585-86, writ denied, 99-1048 (La.6/4/99), 744 So.2d 625.
Should this court find that La.R.S. 9:5605 applies to the causes of action asserted by the Robins against Hattan, the Robins argue that the one-year and three-year peremptive periods do not apply because they have alleged fraud which is an exception to the time limitation found in La.R.S. 9:5605 pursuant to Subsection E. Broussard, 732 So.2d 578. Hattan has filed a motion to strike the Robins' reply brief arguing that the Robins' attempt at asserting a claim for fraud has never been alleged in the pleadings nor presented to the trial court. We disagree.
In their amending petition the Robins allege facts which, if true, constitute *49 fraudulent actions by Hattan. Furthermore, at the hearing on the exception of no cause of action, the record establishes that the Robins argued fraud to the trial court as an exception to peremption pursuant to La.R.S. 9:5605(E). We find that the Robins have properly pled fraud and presented it to the trial court.
Hattan also alleges that the Robins' reply brief should be stricken because it was not timely filed. Even if we were to strike their reply brief, the Robins made these same arguments in their original brief, so the matter is before the court.
The Robins have argued that Hattan failed to defend their interests at the appellate court level. They claim that they were led to believe that Hattan had informed the Logan Law Firm that the Knepper matter had been appealed. There is nothing in this record that indicated any other attorney or firm was to represent the Robins' interest in the appeal. Not sure who to blame, the Robins state that they proceeded to conduct discovery of the matter. The allegations in the Robins' amending petition indicate that between March 5, 2001 and November 15, 2001, the Robins began to suspect that Hattan had manufactured a letter dated September 22, 1998, to the Logan Law Firm notifying it of the Knepper appeal. The Robins claimed that these actions of Hattan were committed to obtain an unjust advantage so they would not file suit.
Regardless, prior to these acts, the actions that the Robins claim damaged them had already been committed. In Jordan v. Employee Transfer Corp., 509 So.2d 420, 423 (La.1987), the supreme court explained a plaintiff's responsibility for filing suit as follows:
Prescription will not begin to run at the earliest possible indication that a plaintiff may have suffered some wrong. Prescription should not be used to force a person who believes he may have been damaged in some way to rush to file suit against all parties who might have caused that damage. On the other hand, a plaintiff will be responsible to seek out those whom he believes may be responsible for a specific injury.
While the allegation that parties may have fabricated a letter as a cover up to somehow gain an unfair advantage are disturbing, these actions did not prevent the Robins from filing suit against all potentially liable parties when they were exposed to an excess judgment. The alleged activities may be fraudulent, but they were not activities which prevented the Robins from filing suit against Hattan. At the time the Robins filed suit against Allstate, they had sufficient facts to also file suit against Hattan.
The Robins also argue that the supplemental and amending petition adding the claims against Hattan relates back to the date of the filing of the original petition, November 16, 2000, so the suit was timely. We recognize that there are cases that have held that a "relation back" theory can apply to claims governed by peremptive periods. Southside Civic Ass'n, Inc. v. Warrington, 93-890 (La.App. 1 Cir. 4/8/94), 635 So.2d 721, writ denied, 94-1219 (La.7/1/94), 639 So.2d 1168; International River Center v. Henry C. Beck Co., 95-1396 (La.App. 4 Cir. 4/10/96), 672 So.2d 1160, writ denied, 96-1185 (La.6/21/96), 675 So.2d 1083. However, we agree with the position taken by this court in Lege v. Vermilion Parish Sch. Bd., 360 So.2d 664 (La.App. 3 Cir.1978), that a supplemental petition filed after a peremptive period has run does not relate back to the time of filing of the original petition. The reasoning is very simple.
Pursuant to La.Code Civ.P. art. 1153 an amending or supplemental petition *50 relates back to the date of filing of the original pleading if the amended petition arises out of the conduct, transaction, or occurrence set forth in the original petition. This is because the original petition has served to interrupt prescription on the subject matter raised in the amending petition. However, in this case a claim for legal malpractice was asserted for the first time in the amending petition which we have already stated is governed by a peremptive period. Since a peremptive period cannot be interrupted, the original petition would not have served to interrupt prescription on this claim. Therefore, the claims asserted by the Robins that are legal malpractice claims have been perempted, as over one year had passed since the Robins knew they were exposed to an excess judgment. The trial court was correct in granting the exception of no cause of action as to these claims.
For the above reasons the judgment of the trial court dated May 14, 2002, granting the exception of no cause of action filed by M. Candice Hattan and M. Candice Hattan, a Professional Law Corporation is affirmed. The judgment dated February 27, 2002, granting the exception of no right of action is reversed and remanded for further proceedings consistent with this opinion. The judgment dated July 12, 2002, granting the exception of no right of action and res judicata filed by Allstate is also reversed and remanded for further proceedings. All costs of this appeal are assessed to Allstate.
MAY 14, 2002 JUDGMENT AFFIRMED.
FEBRUARY 27, 2002 JUDGMENT REVERSED AND REMANDED.