STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

19-312 Consolidated With 19-329


THE RAPIDES PARISH SCHOOL BOARD

VERSUS

ZURICH AMERICAN INSURANCE COMPANY, ET AL


**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 254,644 F
HONORABLE GEORGE C. METOYER, DISTRICT JUDGE

**********

JOHN E. CONERY
JUDGE

**********

Court composed of Sylvia R. Cooks, John E. Conery, and Van H. Kyzar, Judges.


WRITS DENIED.

**Adrian G. Nadeau**
**J. Weston Clark**
**Long Law Firm, L.L.P.**
**1800 City Farm Drive, Building 6**
**Baton Rouge, Louisiana 70806**
**(225) 922-5110**
**COUNSEL FOR DEFENDANTS/RELATORS/RESPONDENTS:**
    **Alliance Design Group, LLC**
    **XL Specialty Insurance Company**

**Temple A. Stephens**
**Comeaux, Stephens & Grace**
**One Lakeway Center, Suite 1060**
**3900 North Causeway Boulevard**
**Metairie, Louisiana 70002**
**(504) 219-2030**
**COUNSEL FOR DEFENDANTS/RELATORS/RESPONDENTS:**
    **Ratcliff Construction Company, LLC**
    **Zurich Insurance Company**

**James C. Downs**
**Attorney At Law**
**1254 Dorchester Drive**
**Alexandria, Louisiana 71303**
**(318) 448-3439**
**COUNSEL FOR PLAINTIFF/RELATOR/RESPONDENT:**
    **The Rapides Parish School Board**

**CONERY, Judge.**

This matter is before the court on the parties' consolidated writ applications. In writ application number 19-312, Relators Alliance Design Group, L.L.C. (Alliance), Alliance's Insurer, XL Specialty Insurance Company (XL Specialty Insurance), Ratcliff Construction Company, L.L.C. (Ratcliff), and Ratcliff's insurer, Zurich American Insurance Company (Zurich) (collectively Defendants), seek review of a trial court's judgment denying its exception of peremption in part. In writ application number 19-329, Relator is the plaintiff, Rapides Parish School Board (RPSB), and via that writ application, RPSB seeks review of the trial court's decision to partially grant Defendants' exception of peremption. For the following reasons, we deny both writ applications.

## FACTS AND PROCEDURAL HISTORY

This case involves a claim for property damages originally sustained when a fire sprinkler head discharged water at a junior high school in Woodworth, Louisiana. On December 26, 2014, at 3:00 a.m., a fire alarm activated at Caroline Dormon Junior High. When responding to the alarm, the local fire department did not find any fire, smoke, or heat. However, the fire department observed that a fire-sprinkler head in the principal's office had activated and released water, causing flooding in that office and a substantial part of the administrative wing of the school. Allegedly, the sprinkler discharge was caused by a defect in the design and construction of the school's fire suppression system. Defendant Alliance was the architect for the school, and Defendant Ratcliff was the general contractor for the construction of the school. On August 17, 2012, RPSB signed a Certificate of Substantial Completion and accepted Ratcliff's construction of the school with a few limited reservations.

As a result of the flooding on December 26, 2014, RPSB timely filed the instant lawsuit on December 18, 2015, against Alliance and Ratcliff and their insurers, XL Specialty Insurance and Zurich, respectively. In the original petition, RPSB alleges that the design and construction of the fire suppression system caused the sprinkler system to discharge, and RPSB seeks to recover for damages resulting from the discharge of water from the sprinkler head. RPSB alleges that the water throughout the sprinkler system pipe was able to freeze and expand due to below freezing temperatures in the attic space above the ceiling and that this expansion affected the sprinkler head's internal mechanisms, thus causing water to leak. RPSB also alleges that the temperature in the attic where the pipes are located dropped below freezing because the walls in the attic were not sufficiently insulated and because some ceiling panels in the principal's office were covered with insulation which prevented warmer air from the building from rising to the attic area. In its original petition, RPSB alleges that it is entitled to recover for the costs of repairing the water damage to the school and to recover for future school repairs which may be necessary due to defective conditions in the school.

Because Defendants Alliance and Ratcliff made allegations that the spontaneous discharge of the sprinkler system at the school was caused by third party fault, RPSB filed a first amended petition on July 28, 2017, adding claims against Tyco Fire and Building Products (Tyco), which is the manufacturer of the sprinkler head, and Anderson Fire Protection of Alexandria, L.L.C. (Anderson Fire Protection), which is the subcontractor that installed the fire suppression system. However, Tyco was subsequently dismissed from the lawsuit on an unopposed motion for summary judgment. Although Anderson Fire Protection remains a

defendant in the lawsuit, that defendant is not involved in the instant writ applications.

In its first amended petition, RPSB also alleges that a post-incident inspection of the fire suppression system revealed that the wrong sprinkler head had been installed **throughout the school** and that many of the sprinkler heads were clogged with a foreign material such that RPSB was required to replace the sprinkler heads throughout the school. RPSB seeks to recover damages from Defendants due to those defects.

On December 20, 2018, the trial court granted leave of court to allow RPSB to file a second amended petition. In Paragraphs 34-35 of that petition, RPSB adds allegations of the following deficiencies: 1) the failure to install a lower level of insulation below the metal roof throughout the school; 2) the use of unfaced batt insulation instead of foil-faced insulation throughout the school; 3) the failure to put the proper vapor barrier behind the brick masonry; 4) the failure to properly supervise the installation of an electric solar panel and electric conduit; 5) the use of improper fan motors and circuit breakers in the heating, ventilation, and air conditioning systems; 6) the failure to obtain a successful final electrical inspection for the issuance of the certificate of occupancy; and 7) the making of false assurances that the school would be built to higher than usual standards with regard to environmental design and energy consumption. Given those deficiencies, RPSB sought damages related both to property damage and to higher utility costs, plus additional personnel costs resulting from monitoring the suspect systems.

Defendants filed an exception of peremption as to the second amended petition, asserting that the newly-raised claims are barred by the five-year peremptive periods set forth in La.R.S. 9:5607, which governs claims against

architects, and La.R.S. 9:2772, which governs claims against building contractors. Following a hearing, the trial court signed a judgment granting Defendants' exception of peremption in part and dismissing a list of some of the specific allegations raised in RPSB's second amended petition.

The trial court also denied the exception of peremption in part, holding that any allegations/claims in RPSB's second amended petition not included in the list of dismissed claims would be allowed to proceed.[1] All Relators now seek review of the trial court's ruling by their respective applications for supervisory writs. In writ application number 19-312, Defendants-Relators assert that the trial court erred when it partially denied their exception of peremption. In writ number 19-329, RPSB-Relator asserts that the trial court erred when it partially granted Defendants' exception of peremption. Thus, Defendants take the position that the trial court should have granted the exception of peremption in its entirety and dismissed all claims raised in RPSB's second amended petition. On the other hand, RPSB takes the position that the trial court should have denied the exception of peremption in its entirety and allowed all claims raised in its second amended petition to proceed.

## LAW AND DISCUSSION

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P.

---

[1] Defendants contend that, in essence, the trial court allowed any claims related to the fire sprinkler system and insulation problems throughout the school, but disallowed the other claims raised in Plaintiff's second amended petition.

RPSB identifies the claims that have been dismissed as follows: the claims arising out of the use of foil-backed insulation, claims for annual excess utilities charges due to the failure to install additional insulation layers, claims regarding electrical code violations, the claims arising out of the use of cheap fan motors in the HVAC system, and the claim for expenses needed to remedy the building's defects and construction code violations.

4

arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933. *But see* La.Code Civ.P. art. 2083, cmt. (b), "Irreparable injury continues to be an important (but not exclusive) ingredient in an application for supervisory writs." (Citations omitted.)

Also, the denial of a peremptory exception is not appealable absent irreparable injury, but the denial can be reviewed on supervisory writs where it fits the criteria of *Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc.*, 396 So.2d 878 (La.1981). *Reilly v. State*, 533 So.2d 1341 (La.App. 3 Cir. 1988), *writ denied*, 536 So.2d 1219 (La.1989).

Defendants contend that it is undisputed that claims against architects and contractors arising out of their work are subject to a five-year peremptive period under La.R.S. 9:5607 and La.R.S. 9:2772, respectively. As to contractors, La.R.S. 9:2772, in pertinent part, provides as follows:

> A. Except as otherwise provided in this Subsection, no action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such term is defined in R.S. 37:682, including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:

> (1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

5

As to architects, La.R.S. 9:5607, in pertinent part, provides as follows:

A. No action for damages against any professional engineer, surveyor, engineer intern, surveyor intern, or licensee as defined in R.S. 37:682, or any professional architect, landscape architect, architect intern, or agent as defined in R.S. 37:141, or professional interior designer, or licensee as defined in R.S. 37:3171, or other similar licensee licensed under the laws of this state, or real estate developer relative to development plans which have been certified by a professional engineer or professional architect, whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:

(1) The date of registry in the mortgage office of acceptance of the work by owner[.]

. . . .

C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.

It is undisputed that the trigger date for the commencement of the running of the peremptive periods in La.R.S. 9:5607(A) and La.R.S. 9:2772(A) is August 17, 2012, the date on which the Certificate of Substantial Completion was signed by RPSB and recorded in the mortgage records. Thus, Defendants argue that any claims against Ratcliff or Alliance as its insurers had to be asserted by August 17, 2017. Defendants contend that the new claims raised in RPSB's second amended petition were filed on December 18, 2018, more than a year after the expiration of the peremptive periods such that, pursuant to La.Civ.Code art. 3458, the new claims raised in the second amended petition were extinguished by peremption before they were asserted.

6

Article 3458 provides that: "Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." Defendants point out that pursuant to La.Civ.Code art. 3461: "Peremption may not be renounced, interrupted, or suspended."

Defendants further argue that the trial court erred when it found some of the claims raised in the second amended petition to be timely based on the "relation back" concept set forth in La.Code Civ.P. art. 1153, which provides: "When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading."

Defendants argue that because the instant case involves peremptive rather than prescriptive periods, the trial court should not have relied on La.Code Civ.P. art. 1153 to conclude that some of the claims filed in the second amended petition do relate back to the date of filing of the original petition. Defendants argue that this court has unequivocally held that "a supplemental petition filed after a peremptive period has run does not relate back to the time of filing of the original petition" because peremptive periods cannot be interrupted. *Robin v. Allstate Ins. Co*., 02-689, p. 11 (La.App. 3 Cir. 2/5/03), 844 So.2d 41, 49, *writ denied*, 03-1818 (La. 10/17/03), 855 So.2d 763. Further, Defendants argue that the Louisiana Supreme Court has reached that same conclusion in *Naghi v. Brener*, 08-2527 (La. 6/26/09), 17 So.3d 919.

In essence, Defendants argue that all of the claims raised in the second amended petition are new and different from those raised in the original petition and first amended petition. Defendants assert that the original petition and first amended

petition did not serve to put them on notice that the new claims would later be asserted in the second amended petition. Defendants also assert that the legislative purpose of the peremptive periods is to protect architects and contractors from remaining indefinitely liable for claims arising out of their work. Further, Defendants contend that it would be absurd to allow a lawsuit against an architect or a contractor for one specific defect arising out of a single occurrence to potentially expose that architect or engineer indefinitely to any and all claims that the RPSB may eventually bring against them. *Id.*

On the other hand, RPSB notes that it entered into a written contract with the architect (Defendant, Alliance) to design the plans and specifications for the construction of a new middle school, and that Defendant, Ratcliff (the contractor), was retained to build the school in a good and workmanlike manner in accord with the plans and specifications and with applicable building codes. RPSB contends that all of the duties of the architect and contractor in this case arose out of their contracts with RPSB, such that its right to enforce Defendants' duties under those contracts constitutes the "cause of action" which is asserted in the case. The new allegations raised in the second amended petition are not separate causes of action, but, rather, are separate claims and demands for damages arising out of the same cause of action asserted in the original petition. RPSB maintains that because the existence of the additional claims and demands was not discovered until after the peremptive periods had run and, because the additional new claims arise out of the same "transaction" or contractual obligation as the claims raised in the original petition, the additional claims should relate back to the date of filing of the original petition pursuant to La.Code Civ.P. art. 1153. According to RPSB, the filing of the original petition put

8

Defendants on notice that their performance under their contracts with RPSB was being questioned. *Id.*

Defendants are correct in their assertion that in the second amended petition, RPSB raises new factual allegations and new "operative facts" along with claims for further damages which had not been raised in the original petition or in the first amended petition. In fact, in RPSB's request for leave of court to file the second amended petition, RPSB admits that the reason that it was filing the second amended petition is because additional inspections revealed more defects in the design and construction of the school.

RPSB does not dispute the fact that claims in the second amended petition were filed after the peremptive periods at issue had expired. Instead, RPSB takes the position that, pursuant to La.Code Civ.P. art. 1153, the additional damage claims in the second amended petition are timely because they relate back to the date of filing of the original petition and that no new cause of action is stated. Simply put, RPSB is claiming that it seeks additional damages based on the same cause of action, breach of contract.

Following a February 2019 hearing, the trial court granted in part and denied in part the Defendants' exception of peremption. In oral reasons for ruling, the trial court stated:

> We got a house of dominos. One domino falls and then they [all] start to fall. All right. I'm going to grant the exception of [peremption] in part and overrule the exception [in] other parts. As it relates to the fire sprinkler and the insulation of the building, I'm going to overrule the exception of [peremption] and all the other causes of action are excused. So[,] the code violations and all of that … it's important but it should have been brought to the attention of somebody before this incident happened. This was the precipitating incident, but again, the fire sprinkler and the insulation involved with that may not be the only answer. It may be some electrical problems involved, but [if] [it] relates to the fire sprinkler system and any insulation problems, then I believe

9

at this point the school board is correct in trying to alleviate the problem because it's going to be a continuing problem if - if it's not corrected. Okay.

In its writ application 19-312 urging reversal of the trial court's decision to maintain some of the newly plead claims, Defendants urge the application of the supreme court case of *Naghi v. Brener,* 08-2527 (La. 6/26/09), 17 So.3d 919. It forcefully argues that peremption should be applied to all claims in the second amended petition. We do not find that the facts of *Naghi* are applicable here. *Naghi* involved a claim against an attorney for malpractice, pursuant to La.R.S. 9:5605, which states, "The one-year and three-year periods of limitation … are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted or suspended." Benny and Ephraim Naghi's original petition for property damages was timely brought within the one-year peremptive period of La.R.S. 9:5605. However, the original petition was filed on behalf of the Naghis individually, and the property at issue was owned by their corporation, Mohtaram, Inc. As the Naghis did not own the property in their individual capacities, they had no right of action to make a claim for property damages. **After** the one-year peremptive period had run, the Naghis sought to file a supplemental and amended petition naming the correct owner of the property, Mohtaram, Inc., as the proper party plaintiff.

The supreme court found that La.Code Civ.P. art. 1153, which allows the relation back of an amended petition to a petition properly filed within the peremptive period, did not apply, concluding: "Peremption differs from prescription in two respects: (1) the expiration of the peremptive time period destroys the cause of action itself; and (2) nothing may interfere with the running of a peremptive time period." *Id.* at 926. Therefore, because the Naghis' original petition failed to state

a right of action, as it was brought by parties without ownership of the property at issue, the untimely filed first supplemental/amending petition could not relate back to the original petition as the first petition was not filed in the name of a proper party plaintiff prior to the expiration of the peremptive time period. There is no question that in the case at bar, RPSB clearly had a right of action to pursue its claims, and we find that *Naghi*'s expansive language is distinguishable and inapplicable to this case.

In the more recent case of *Scaglione v. Juneau*, 10-1734, p. 2 (La. 7/27/10), 40 So.3d 127, 128, the supreme court reversed and remanded the lower court's ruling maintaining a peremptory exception of peremption dismissing a citizens' petition objecting to an appellate judge's candidacy. In order to state a cause of action, the plaintiffs in that case were required to name in their original petition both the candidate and the Secretary of State within the required peremptive time period, which they failed to do. Instead the plaintiffs named the Clerk of Court for St. Bernard Parish, not a proper party defendant under the statute at issue.

In reversing the lower court's ruling relying on *Naghi*, the supreme court stated, "'A cause of action, when used in the context of the peremptory exception, is defined as the **operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant**.'" *Id.* (emphasis added) (quoting *Ramey v. DeCaire*, 03-1299, p. 7 (La. 3/19/04), 869 So.2d 114, 118). The *Scaglione* court further distinguished *Naghi* by stating, "Here, the plaintiffs initially set forth a viable claim in their original petition and the proposed addition or substitution of the Secretary of State does not involve a different or new cause of action. *See* La. C.C.P. art 1153; *see also Ray v. Alexandria Mall*, 434 So.2d 1083 (La.1983)." *Id.*

11

In a case involving a construction contract to build a swimming pool, a panel of our sister circuit found that it was "bound by the holding in *Scaglione*: If an amended petition filed after the expiration of a peremptive period does not involve a different or new cause of action, the amended petition relates back to the original petition under La.Code Civ.P. art. 1153, and is timely filed." *Duvio v. Specialty Pools Co., LLC*, 15-423, p. 17 (La.App. 4 Cir. 6/16/16), 216 So.3d 999, 1012. Adopting the rationale of *Scaglione*, the fourth circuit denied the defendants' claim of peremption of the pool owner's additional claims for damages due to additional ground settlement causing additional damages filed after the peremptive period. *Id.* The panel engaged in an extensive discussion of both *Naghi* and *Scaglione* in reaching its conclusion that Article 1153 applied to the claims made in plaintiff's second amended petition. The *Duvio* court also found that the defendant had notice of the additional claims based on the original petition, which contained broad allegations of other related defects in the pool's construction and stated:

> An amended petition relates back to the original petition if the original pleading "[gave] fair notice of the general fact situation out of which the amended claim arises." *Gunter v. Plauche,* 439 So.2d 437, 440 (La.1983). "Article 1153 requires only that the amending petition's thrust factually relates to the conduct, transaction or occurrence originally alleged." *Id.*

*Id*. In *Duvio*, the court found that the defendants would have had fair notice there were foundation problems with the pool based on the original "allegations of sinking and cracking."

Similarly, we find that Defendants in this case also had fair notice of the issues with the building relating to, as the trial court explained, the "fire sprinkler" and the "insulation," making the notice of some of the claims in RPSB's second supplemental and amended petition "fair" pursuant to La.Code Civ.P. art. 1153.

12

The trial court's reasons for ruling and its detailed judgment of March 25, 2019, both indicate that only those portions of RPSB's second amended petition that relate to the causes of action made in the timely filed first and amended petitions concerning "the fire sprinkler and the insulation of the building" were allowed to remain. That finding is consistent with the reasoning in *Duvio* as the trial court allowed amendment of the petition, but confined that amendment to causes of action fairly advanced by the timely petitions.

The trial court's finding is further consistent with the supreme court's explanation that for purposes of the exception of peremption, a cause of action is defined as "'the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant.'" *Scaglione*, 40 So.2d at 128 (quoting *Ramey*, 869 So.2d at 118). Moreover, in so ruling, the supreme court also referenced La.R.S. 18:1406(B), which states: "The petition shall set forth in specific detail the facts upon which the objection or contest is based."

The operative facts and the preserved causes of action are seen by comparison of the timely pleadings to that filed after the close of the peremptive period. By the original petition, RPSB described the flooding event, implicated the sprinkler and insulations systems, and broadly alleged that:

> Plaintiff shows that the substantial cost of the remediation of the water damage to the school, and the **future repairs necessary to permanently alleviate the defective construction and condition of the school building** are the result of the combined fault, negligence, and breach of contract by Alliance and Ratcliff, their agents and employees, consisting of but not limited to the following:
>
> AS TO ALLIANCE
>
> a)   Providing inconsistent and unclear plans and specifications relative to the placement of insulation in the ceiling and the vertical walls of the attic area near the principal's office;

13

b) Failing to properly design a system to protect the sprinkler piping system from freezing and damaging the sprinkler head;

c) Failing to note during one or more of the required or performed building inspections, the improper installation and/or placement of insulation as described above;

d) Failing to exercise reasonable skill and care in the rendering of architectural services to plaintiff including not properly supervising construction of the school to insure that it was completed in accordance with the plans and specifications by Ratcliff and the subcontractors engaged by Ratcliff;

e) Failing to comply with the directive of the Louisiana Fire Marshall's Office and of the NFPA to design and insure the installation of a system that would protect the sprinkler piping system from freezing, which freezing was the direct and proximate cause of the discharge of water into the principal's office and beyond.

AS TO RATCLIFF

a) Failing to follow the plans and specifications with regard to the installation of the insulation batts between the metal supporting studs in the area of the principal's office;

b) Placing insulation batts horizontally on top of the suspended ceiling so as to inhibit the transfer of heat from the interior of the office into the attic space immediately above to which actions or failures described in this paragraph and the paragraph immediately above permitted the attic temperature to fall below freezing and freeze the water within the sprinkler system resulting in the discharge of water into the principal's office and beyond;

c) Failing to advise the architect of the uncertainty or discrepancy in the plans and specifications in regard to the installation of the insulation in the school building and thus obtain a clarifying instruction from the architect regarding the insulation installation;

d) Failing to supervise and direct the installation of the insulation by Ratcliff's agents, employees or subcontractors so as to prevent the improper installation procedures in the area of the principal's office;

14

e)　Failing to install the fire protection's sprinkler system in accordance with the requirements of the NFPA and particularly Section 13:8.1.5.3.1 and the directives of the Louisiana Office of the Fire Marshal.

(Emphasis added.) RPSB continued, alleging that:

Because the deficiencies in the installation of the insulation described above were concealed within the attic crawl space and because the peculiarities of the installation requirements are peculiarly within the areas of expertise of architects, engineers, contractors and other like professionals, plaintiff was unaware until the flooding event of December 26, 2014 that the building was designed and/or constructed in a defective manner; immediately after receiving the verbal report of the forensic engineer who performed the examination and testing in this case plaintiff's representative contacted Alliance and informed the representative of the investigation and the claim to be made herein. The representative advised that Ratcliff, would be contacted by Alliance and advised of the findings of the investigation and the claim.

The petition further references the contractual relationship with the insurers which obligated those insurers "to pay and indemnify plaintiff for the damages and expenses occasioned by the flooding incident described hereinabove." That incident, as described by RPSB in the petition, stemmed from the fire suppression and insulation aspects of the building.

By its timely filed first amended petition, RPSB not only included Tyco and Anderson Fire Protection as defendants, it reiterated that:

[P]laintiff alleges upon information and belief that the primary cause of the sprinkler head discharge and the resulting flooding damages to the school and the consequences thereof was the design of the building, the failure to inspect the construction and the improper insulation of the attic space and the failure to follow the various NFPA requirements concerning the protection of the sprinkler system from freezing[.]

RPSB maintained its broad demand "for the full extent of the flooding and remediation damages" and further sought "all expenses and damages incurred by the Board in the subsequent inspection, removal and replacement of the fire sprinkler heads throughout the school by Jefferson Sprinkler[.]"

Identifying these timely petitions as advancing causes of action associated with purported defects in the "fire sprinkler system and the insulation of the building," the trial court looked to the allegations of the second amended petition and maintained the original, broad claim for damages arising from that common factual basis. It excised, however, those portions of the petition associated with the claim for damages for "all other causes of action[.]"

The excluded portions of the petition reveal specific allegations related to: purported violations of Louisiana Public Bid Law, National Electrical Code violations in the installation of wiring conduit pipes throughout the building as well as other "many other NEC code provisions in the electrical system" that "exist and must be corrected[,]" installation of circuit breakers affecting the motors of the air conditioning and heating system, and failure to obtain final building inspections and, in turn, an occupancy permit requiring the hiring of personnel to monitor conditions associated with "faulty or defective or inadequate construction and installation of the various electrical plumbing and other systems at the school," plus multiple suspected violations of building codes and safety regulations that could be demonstrated by further inspection. Due to these additional claims of faulty performance, RPSB claims additional damages beyond those associated with damages initially caused by the flooding and remediation and now seeks damages for all issues related to the design and construction of the school. RPSB further seeks diminution in the value of the school, past, present, future increased utility costs, and adjustments to the contract price.

We find that the expansion of the facts plead in the second amended petition to components of the building project or elements of damage not relating to the fire sprinklers and insulation did not provide "fair notice" to Defendants. The trial

16

court's signed judgment detailing and parsing the factual allegations of the untimely second amended petition balances the concept that a "right is extinguished upon the expiration of the peremptive period" as provided by La.Civ.Code art. 3458, with the principle that issues of preemption are to be strictly construed against preemption and in favor of the claim.[2]

Neither do we find that the trial court's factual focus is contrary to jurisprudence advanced by Defendants in their latest response brief. While Defendants suggest that *Udomeh v. Joseph*, 11-2839 (La. 10/26/12), 103 So.3d 343, supports their preemption claim, *Udomeh* involved a paternity action in which the purported father failed to request a judgment of paternity within his initial allegations, a pre-requisite to his stating a right of action. Again, RPSB clearly has a right of action in this case. Additionally, Defendants reference to *Udomeh*'s broad statement that "'relation back of an amended or supplemental pleading … is not allowed to amend the running of a peremptive period'" must be viewed within the context of

---

[2] As explained in *Ristroph v. Louisiana Public Facilities Authority*, 06-1669, p. 9 (La.App. 1 Cir. 9/14/06), 943 So.2d 492, 497:

> Preemption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period. LSA–C.C. art. 3458. Preemption may not be renounced, interrupted, or suspended. LSA–C.C. art. 3461. "Nevertheless, when an action asserting a right subject to preemption has been commenced or served as provided in Article 3462 [by filing suit], the right has been exercised and so long as the action is pending the lapse of the period of preemption does not extinguish the right." LSA–C.C. art. 3461, Revision Comments–1982, comment c; *Capitol House Preservation Co., L.L.C. v. Perryman Consultants, Inc.,* 98–2216 (La.App. 1 Cir. 11/5/99), 745 So.2d 1194, 1195, *writ denied,* 99–3446 (La.2/11/00), 754 So.2d 937. Like prescription statutes, preemption statutes are to be strictly construed against preemption and in favor of the claim that is said to be extinguished. Of the possible constructions, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement, should be adopted. *Albach v. Kennedy,* 00–0636 (La.App. 1 Cir. 8/6/01), 801 So.2d 476, 482, *writ denied,* 01–2499 (La.10/12/01), 799 So.2d 1138.

*See Rando v. Anco Insulations, Inc.*, 08-1163 (La. 5/22/09), 16 So.3d 1065. *See also Phoenix of Hartford Ins. Co. v. U.S. Rubber Co.*, 245 So.2d 436 (La.App. 1 Cir. 1970).

the facts of that case. *Id.* at 348 (quoting *Naghi*, 17 So.3d at 925). The interpretation urged by Defendants is not in keeping with the supreme court's ruling in *Scaglione.*

Defendants further rely on *Robin v. Allstate Insurance Co.*, 02-689 (La.App. 3 Cir. 2/5/03), 844 So.2d 41, *writ denied*, 03-1818 (La. 10/17/03), 855 So.2d 763 and *Marsh Engineering, Inc. v. Parker*, 04-509 (La.App. 3 Cir. 9/29/04), 883 So.2d 1119. Neither case dictates a finding of peremption under the facts of this case.

In *Robin*, 844 So.2d at 49, a panel of this court favorably remarked on the principle that "a supplemental petition filed after a peremptive period has run does not relate back to the time of filing of the original petition." Explaining that the reasoning for that concept "is very simple[,]" the panel continued, however, and stated:

> Pursuant to La.Code Civ.P. art. 1153 an amending or supplemental petition relates back to the date of filing of the original pleading if the amended petition arises out of the conduct, transaction, or occurrence set forth in the original petition. This is because the original petition has served to interrupt prescription on the subject matter raised in the amended petition. However, in this case a claim for legal malpractice was asserted for the first time in the amending petition which we have already stated is governed by a peremptive period. Since a peremptive period cannot be interrupted, the original petition would not have served to interrupt prescription on this claim.

*Id.* at 49-50. In this case, the timely petitions preserved certain causes of action as discussed, allowing the relation back of the allegations pertaining to those matters. In *Robin*, however, the plaintiff's first-filed petition lodged only a policy claim against an automobile insurer. The amended petition lodged a separate, factually distinct legal malpractice claim. We find that *Robin* is factually and legally distinct from this case.

Likewise, *Marsh*, 883 So.2d 1119, involved a suit where an initial, timely claim was brought for damages sustained in a business transaction. The plaintiffs

advanced various causes of action, including breach of contract, fraud, breach of fiduciary duty, and nullity. One of the defendants, an attorney, was alleged to have functioned as the plaintiff's legal advisor. By an amended petition, however, the plaintiff "asserted for the first time" that both the defendant attorney, Parker, and his partner, Bean, had provided legal representation. *Id.* at 1122. Given that assertion, the plaintiff sought to include Bean and the law firm of "Bean and Parker" as defendants and solidary obligors in a legal malpractice claim. Although the plaintiff claimed that the suit "related back" to the timely filed petition, the appellate panel determined that "Bean's alleged acts of legal malpractice [were] **separate causes of action** from Parker's alleged legal malpractice acts." *Id.* at 1125 (emphasis added). The panel instead explained that the plaintiff failed to timely file suit against Bean "for his individual acts of legal malpractice within that time period[.]" *Id.* As a result, the panel found no error in the determination that the suit against both Bean and the law firm "for any acts of legal malpractice by Bean were perempted." *Id.*

Although Defendants advance *Robin* and *Marsh* for the proposition that a supplemental petition filed after a peremptive period has expired does not relate back to a timely filed petition, examination of those cases, however, reveals the courts' inquiry into whether "the original petition has served to interrupt prescription on the subject matter raised in the amending petition." *Robin*, 844 So.2d at 50. In this case, the trial court identified certain common operative facts in fashioning its ruling.

While we agree with Defendants that the jurisprudential doctrine of *contra non valentem* does not apply and peremption cannot be extended due to a late discovered and new cause of action,[3] we also find that the "relation back" provision

---

[3] The supreme court has plainly explained that, as peremption extinguishes a right, and it may not be interrupted, suspended or renounced, the doctrine of *contra non valentem* is

19

of La.Code Civ.P. art. 1153 allows the relation back of additional damages as long as the claims have a sufficient factual basis to the claims originally plead. *See Scaglione*, 40 So.3d 127; *Duvio*, 216 So.3d 999. On examination for such operative facts, jurisprudence provides for a strict construction in favor of maintaining enforcement of the newly asserted claim or action. *See Lomont v. Bennett*, 14-2483 (La. 6/30/15), 172 So.3d 620, *cert. denied*, _ U.S. _, 136 S.Ct. 1167 (2016); *Rando*, 16 So.3d 1065. *See also Thrasher Constr., Inc. v. Gibbs Residential, L.L.C.*, 15-607 (La.App. 4 Cir. 6/29/16), 197 So.3d 283, *writ denied*, 16-1453 (La. 11/15/16), 209 So.3d 779; *Ristroph*, 943 So.2d 492.

Further, we recognize and agree with the arguments made by RPSB that the filing of the initial petition and first amended petition **should have** put Defendants on notice of alleged faulty design and construction of the entire school. This issue involves design and construction of a school where lives of innocent children, teachers, school personnel, and administrators were allegedly all put at risk. The allegations of record indicate that neither the architect nor the contractor sought or obtained a Final Inspection of the school construction from the Rapides Area Planning Commission, the agency responsible for permitting the permanent connection of electrical power to the school. In fact, it was an electrical fire in the HVAC and air conditioning units at the school on September 11, 2018 that caused RPSB to hire additional engineers and experts who eventually brought to light the allegations of additional repairs and damages claimed in the second amended petition at issue. We agree that the equities are in favor of RPSB and the post

---

inapplicable to peremptive periods. *Borel v. Young*, 07-419 (La. 11/27/07), 989 So.2d 42. In contrast, a prescriptive period is an inchoate right and may be renounced, interrupted, or suspended. Thus, *contra non valentem* may apply to a prescriptive period and only "where in fact and for good cause a plaintiff is unable to exercise his cause of action when it accrues." *Id.* at 49.

peremption supplemental claims, if proven to be true, directly result from breaches of the legal and contractual responsibility of the architect and contractor. The facts in this case present a close question as to whether all of the "new claims" alleged by RPSB are sufficiently related to the broad allegations of faulty design and construction alleged in the original petition such that they "relate back" to the timely pled original petition under La.Code Civ.P. art. 1153, as ably argued by counsel for RPSB.

However, the legislature failed to expressly so limit the preemptive statutes at issue. While we acknowledge the line of cases such as *Ristroph*, 943 So.2d 492, that hold that peremption claims should be strictly construed against the moving party claiming peremption and in favor of the claimant, we are constrained to find that, except for the new claims allowed by the trial court as being fairly related to the timely filed initial claims, the broad expansion of the pleadings in this case alleging admittedly new claims goes beyond that which the supreme court has previously allowed in cases of this nature.

Under the current state of the law, we find that the trial court's carefully crafted judgment was within its discretion and we affirm the trial court's decision in its entirety.

**CONCLUSION**

For the foregoing reasons, we deny Defendants' writ application number 19-312 and RPSB's writ application number 19-329. We affirm the trial court's detailed judgment of March 25, 2019, with each party to pay its own costs.

**WRITS DENIED.**

21